Anthony **LEWIS**, Plaintiff-Appellant,

v.

**LOUISIANA STATE BAR ASSOCIATION**, Defendant-Appellee.

No. 85–3650
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 20, 1986.

Nicolas Estiverne, New Orleans, La., for plaintiff-appellant.

Carl J. Barbier, New Orleans, La., for defendant-appellee.

Before GEE, REAVLEY, and HILL, Circuit Judges.

## OPINION

ROBERT MADDEN HILL, Circuit Judge:

This appeal presents a challenge to the district court's dismissal of plaintiff Anthony P. Lewis' suit against the Louisiana State Bar Association (Bar Association). We affirm.

### I.

This controversy arises from Lewis' three failed attempts to pass the Louisiana state bar examination in July 1983, February 1984, and July 1984. Following Lewis' receipt of his third failing grade the policies of the state supreme court in effect at

the time absolutely foreclosed his entry into the Louisiana state bar. He was neither permitted to challenge the failing grade (the examination papers having been destroyed) nor was he permitted to sit for the examination a fourth time. Lewis brought suit claiming that these two policies violated his due process rights under color of state law.

The policies challenged by Lewis have their origin in article XIV of the Bar Association's Articles of Incorporation, the starting point of this analysis. In the first section of Act 54 of 1940, the Louisiana state legislature issued a memorial to the state supreme court directing it to

> exercise its inherent powers by providing for the organization and regulation of the Louisiana State Bar Association, by providing rules and regulations concerning admissions to the Bar, the conduct and activities of the Association and its members; and by providing a schedule of membership dues, the non-payment of which shall be ground for suspension; and by providing for the discipline, suspension or disbarment of its members.

Pursuant to this memorial, the supreme court rendered an order on March 12, 1984, completing the organization as follows:

> The Louisiana State Bar Association is hereby organized under the rule-making power of the Court. The rules and regulations which shall govern it as an agency of the Court are [the articles of incorporation].

These articles were subsequently adopted as rules of the supreme court.

Section 1 of article XIV provides for the creation of the Committee on Bar Admissions. This Committee, comprised of eleven persons appointed by the supreme court, is solely responsible for examining and certifying qualified applicants to the supreme court for admission to the bar. Art. XIV § 2.

Other provisions of article XIV set forth rules relating to the Committee's administration of the bar examination. Of importance in this case is section 10 which, in 1984 when Lewis failed his third examination, prohibited a bar applicant from taking the bar examination more than three times. Prior to its amendment in July 27, 1982, and after subsequent re-amendment on May 3, 1985, section 10 provided for an unlimited right of re-examination. Thus, the so-called three-time-limitation rule was in effect only between 1982 and 1985.

In addition to the rules and regulations expressly articulated in article XIV, there are informal rules which are formulated by the Committee and approved by the supreme court pursuant to article XIV section 3. At issue in this dispute is such a policy of the Committee which calls for the destruction of bar examination papers immediately after grading, thus depriving examinees of an opportunity to contest a failing grade. Prior to the enactment of the three-time-limitation rule, this policy was challenged and was upheld as consonant with the due process clause in two opinions of this circuit, *Brewer v. Wegmann*, 691 F.2d 216 (5th Cir.1982), *cert. denied*, 461 U.S. 908, 103 S.Ct. 1881, 76 L.Ed.2d 811 (1983), and *Tyler v. Vickery*, 517 F.2d 1089 (5th Cir.1975), *cert. denied*, 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976). Without deciding what procedures were constitutionally required, we found that the examinee's unqualified right to retake the examination was equivalent to a hearing and, therefore, satisfied the most rigorous of all possible due process requirements.

Because these opinions were based on the availability of an unlimited right to retake the examination, they are not dispositive with respect to the three-year period when the three-time-limitation rule was in effect. Lewis' appeal is the first to challenge the constitutionality of the Committee's post-examination review procedures in conjunction with the three-time-limitation rule.

Lewis filed his complaint in the district court on September 21, 1984. On May 3, 1985, as we have previously related, the supreme court again amended section 10, dispensing with the three-time-limitation rule in favor of a policy permitting unlimited re-examination. This amendment en-

abled Lewis to take the bar examination a fourth time in July 1985; and, henceforth, he may sit for as many future scheduled examinations as he desires. Following the May 3, 1985, amendment the Bar Association moved to dismiss the lawsuit pursuant to Fed.R.Civ.P. 12(b)(6). The district court, relying on *Tyler* and *Brewer* upholding the pre-1982 bar examination procedures as constitutional, found that the 1985 amendment (re-implementing these procedures) mooted Lewis' claims.

Lewis challenges the dismissal of his suit on two grounds. First, he maintains that his claim for an injunction remains live because without some measure of declaratory relief, the Bar Association is likely to repeal the 1985 amendment and re-enact the three-time-limitation rule. Second, he argues that the 1985 amendment did not moot his claim for damages he sustained during the time that the three-time-limitation rule was in effect.[1]

## II.

■ As a general rule, "voluntary cessation of alleged illegal conduct" will not make a case moot. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)). However, if

> (1) it can be said with assurance that "there is no reasonable expectation ..." that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation,

the case becomes moot. *Davis*, 440 U.S. at 631, 99 S.Ct. at 1383 (citations omitted) (quoting *Grant*, 345 U.S. at 633, 73 S.Ct. at 897).

■ The first prong of this test speaks to the appropriateness of declaratory relief and is clearly satisfied in this case. Pursuant to article XVII of the Bar Association's Articles of Incorporation, article XIV can be amended only by approval of the supreme court. Given the Louisiana supreme court's role in the adoption of section 10 and the institutional permanence which its participation lends to the process of rule-making, we believe there is no basis for Lewis' fears that the 1985 amendment is a temporary measure, designed only to avoid the consequences of this lawsuit. Clearly, the three-year break in Louisiana's otherwise continuous policy of unlimited re-examination was an experiment, abandoned in May 1985 when the supreme court entered its order amending section 10. Thus, there is no probable future conduct to which the declaratory judgment sought by Lewis could attach and we are without power to award such relief. *Id.* 440 U.S. at 632–33, 99 S.Ct. at 1383–84. We affirm, then, the district court's finding that Lewis' claim for declaratory relief was rendered moot by the 1985 amendment.[2]

The second prong of the *Grant* test is considerably more problematic. In essence, it poses the question whether a defendant's initial, later-recanted posture denying a plaintiff a post-deprivation hearing[3] rises to the level of a constitutional injury. While it is clear that the denial of a pre-deprivation hearing is a cognizable constitutional injury which is not cured by later-afforded, post-deprivation process; *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Laje v. R.E. Thomason General Hospital*, 665 F.2d 724 (5th Cir.1982); *Wilson v. Taylor*, 658 F.2d 1021, 1031–32 (5th Cir.1981); *Ellis v.*

---

1. Lewis offers similar arguments with respect to additional issues which are not addressed in this opinion. Only one of these issues was raised in Lewis' complaint: the constitutionality of essay examinations. This manner of testing was upheld in *Tyler*, 517 F.2d 1089.

2. We also note that the members of the Louisiana supreme court, having the ultimate authority to adopt bar admission rules and regulations,

are indispensible parties with respect to Lewis' claim for declaratory relief. *Hefner v. Alexander*, 779 F.2d 277, 282 (5th Cir.1985).

3. The deprivation occurred when the Committee's award of a failing grade prevented Lewis from pursuing a legal career. This deprivation clearly can be reviewed only after the event of grading and is not susceptible to any sort of pre-deprivation challenge.

*Blum,* 643 F.2d 68 (2d Cir.1981) (Friendly, J.); we are aware of no authority which discusses whether subsequent vindication of a complainant's substantive rights through adequate process moots his claim that, initially, he had been subjected to an unconstitutional policy denying him post-deprivation process.

### III.

■ It having long been the policy of this court to avoid the challenges (and pitfalls) of constitutional inroads when an alternate route presents itself, we decline to express an opinion as to whether the 1985 amendment moots Lewis' claim for damages. Instead, we rest our decision on the firm, unshakable ground that under the eleventh amendment we lack jurisdiction to entertain a suit for punitive or compensatory damages against an individual[4] when the state is the real party in interest and the relief sought would operate against the sovereign by expending itself on state coffers. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 101–02, 104 S.Ct. 900, 908–09, 79 L.Ed.2d 67 (1984); *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Department of Treasury of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945); *Mohler v. State of Mississippi,* 782 F.2d 1291, 1293 (5th Cir.1986); *Papasan v. United States,* 756 F.2d 1087, 1092–93 (5th Cir.), *cert. granted,* — U.S. —, 106 S.Ct. 521, 88 L.Ed.2d 454 (1985).

■ When exercising its sovereign rule-making authority, a state supreme court occupies the same position as that of the state legislature. *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). Thus, both the three-time-limitation rule embodied in section 10 and the no-review policy approved by the supreme court pursuant to article XIV section 3 are to be considered as though they were "compelled by direction of the State acting as a sovereign." *Id.* at 360, 97 S.Ct. at 2697 (quoting *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 791, 95 S.Ct. 2004, 2015, 44 L.Ed.2d 572 (1975). In a suit challenging a rule of the supreme court, the supreme court is the real party in interest if it has the ultimate authority to adopt and enforce the rule in question. *Bates,* 433 U.S. at 361, 97 S.Ct. at 2697. In such an instance, moreover, a state bar association, whose role is "completely defined by the court," "acts as the agent of the court" and occupies the position of a "public official" or "public agency." *Id.; see also Kremp v. Dobbs,* 775 F.2d 1319 (5th Cir. 1985) (Texas Bar Association is a state agency); *Hoover v. Ronwin,* 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984) (Arizona Supreme Court's Committee on Examinations and Admissions was an adjunct of the supreme court and its acts constituted acts of the state).

■ Here, the Louisiana Supreme Court has final and ultimate authority to formulate both the standards by which bar applicants' qualifications are measured and the rules governing application of those standards. Article XIV cannot be amended except by adoption of the supreme court. Art. XVII. All rules and regulations governing bar examinations are either contained in article XIV or are approved by the supreme court pursuant to section 3 of that article. Moreover, every member of the Committee on Bar Admissions and every assistant examiner is appointed by the

---

**4.** Although there is ample authority to the effect that the Bar Association is an *agency* of the supreme court, *e.g. In re Jones,* 202 La. 729, 12 So.2d 795, 796 (1943), we believe that the Bar Association is more appropriately analogized to an individual *agent* of the court. Section 1 of Act. No. 54 of 1940 provides that the "Association shall be self-governing and may be organized as a corporation upon complying with the general corporation laws of this state with pow-er to contract, and to sue and be sued...." We believe that the terms of the enactment are incompatible with a view of the Bar Association as a state agency per se. More accurately, the Bar Association is a corporate entity which, in matters relating to its exercise of delegated sovereign powers, *see In re Mundy,* 202 La. 41, 11 So.2d 398 (1942), is entitled to invoke the eleventh amendment.

supreme court. Art. XIV § 2. The only function of the Bar Association in the ongoing process of bar admissions is to advise the Committee, to nominate Committee members for supreme court approval, and to propose amendments to article XIV to the supreme court, activities which are entirely subservient to the supreme court's rule-making objectives. Further, we note that under the authority of *In re Mundy*, 11 So.2d 398, bar association dues (which presumably would provide the source for payment of an award of damages to Lewis) are state license taxes, levied by express authority of the Louisiana state legislature in Act 54 of 1940. An award of damages against the Bar Association would, therefore, be satisfied with public funds.

From the foregoing, we conclude that the district court lacked jurisdiction under the eleventh amendment to entertain a suit against the Bar Association for damages and that this claim was, therefore, properly dismissed by the district court.

AFFIRMED.