John CROSETTO, et al., Plaintiffs–
Appellants,

v.

STATE BAR OF WISCONSIN, et
al., Defendants–Appellees.

No. 92–3899.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 29, 1993.

Decided Dec. 20, 1993.

Rehearing and Suggestion for Rehearing
En Banc Denied Jan. 24, 1994.*

* Circuit Judges Cudahy and Coffey did not partici-
pate in consideration of Rehearing.

Amedeo Greco, Madison, WI (argued), for plaintiffs-appellants.

John S. Skilton (argued), William M. Conley, Foley & Lardner, Roberta F. Howell, Madison, WI, Frank D. Remington, Asst. Atty. Gen. (argued), Wisconsin Dept. of Justice, Madison, WI, for defendants-appellees.

Before FLAUM, EASTERBROOK, and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

In this case Wisconsin lawyers, John Crosetto, Kenneth Doran, and Douglas Kammer ("Plaintiffs"), have alleged that the State Bar of Wisconsin, Stephen Smay (the Executive Director of the Wisconsin Bar), and the Justices of the Wisconsin Supreme Court ("Defendants"), violated Plaintiffs' First Amendment rights by requiring Plaintiffs both to join the Wisconsin State Bar and to contribute money for certain political causes in order to practice law in the State. The district court granted Defendants' motion for summary judgment finding that Defendants acted in good faith and holding that Defendants were entitled to qualified immunity. Furthermore, the district court denied Plaintiffs' motion for a preliminary injunction, upholding the constitutionality of Wisconsin's integrated bar and compulsory membership dues. We affirm in part, vacate in part, and remand this case to the district court for a factual finding.

## I. Background

The issue presented here is not wholly new to this court and we are mindful of the long history of litigation surrounding Wisconsin's mandatory bar rule. In 1943, the Wisconsin legislature enacted a bill directing that there "shall be an association to be known as the 'State Bar of Wisconsin' composed of persons licensed to practice law in this state, and membership in the association shall be a

condition precedent to the right to practice law in Wisconsin." Wis.Stat. § 256.31 (1943). Construing the statute to be merely advisory, the Wisconsin Supreme Court initially declined to integrate [1] the State's bar, and allowed the bar association membership to remain voluntary. *See Integration of Bar Case,* 244 Wis. 8, 11 N.W.2d 604 (1943); *In re Integration of the Bar,* 249 Wis. 523, 25 N.W.2d 500 (1946).

By 1956, the Wisconsin Supreme Court had become concerned that "too many lawyers have refrained or refused to join [the voluntary bar association], that membership in the voluntary association [had] become static, and that substantial minority of the lawyers in the state [were] not associated with the State Bar Association." *In the Matter of the Integration of the Bar,* 273 Wis. 281, 77 N.W.2d 602 (1956). The Court ordered integration of the State's bar on an interim basis, *id.* 77 N.W.2d at 604, and after a two year trial period, the Court permanently integrated the State's bar.

A significant portion of Wisconsin lawyers opposed the Wisconsin Supreme Court's decision and filed a lawsuit alleging that Wisconsin's integrated bar violated the First Amendment. This lawsuit ultimately reached the Supreme Court of the United States. *Lathrop v. Donohue,* 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961). In *Lathrop,* six justices employed a legitimate state interest test and concluded that Wisconsin's integrated bar did not violate a Wisconsin lawyers' First Amendment rights. But *Lathrop* hardly settled the opposition to Wisconsin's integrated bar. By the late 1970s, resistance to Wisconsin's integrated bar became so pronounced, as the State Bar became increasingly involved in advocating various political policies, that the Wisconsin Supreme Court decided to allow all attorneys who objected to the Bar's political expenditures to reduce their membership dues according to that portion of dues spent on the objectionable political activities. *See Matter*

*of Discontinuation of Wis. State Bar,* 93 Wis.2d 385, 286 N.W.2d 601 (1980).

Unsatisfied by the Wisconsin Supreme Court's dues-reduction compromise, a Wisconsin lawyer filed a federal class action suit challenging the facial constitutionality of Wisconsin's integrated bar. *Levine v. Supreme Court of Wisconsin,* 679 F.Supp. 1478 (W.D.Wis.1988) (hereinafter *"Levine I"*). In *Levine I,* the plaintiff contended that compulsory membership dues facially violate a Wisconsin lawyer's speech and association rights under the First Amendment. *Id.* at 1489. Alternatively, the plaintiff argued that the Bar's use of compulsory dues to fund political advocacy violated the First Amendment and that Wisconsin's dues-reduction compromise failed to cure this defect. *Id.* at 1502. Without addressing the plaintiff's alternative argument, the district court declared that Wisconsin's mandatory bar membership rule and its Bar dues requirement facially violated all Wisconsin lawyers' First and Fourteenth Amendment rights. *Id.* The district court awarded the plaintiff both compensatory and punitive damages, and enjoined the State Bar's from enforcing its mandatory bar-membership rule. *Id.* In its analysis, the district court questioned the continued viability of *Lathrop,* the cornerstone upon which the defendant's legal arguments for an integrated bar rested. To comply with *Levine I,* the Wisconsin Supreme Court suspended enforcement of the mandatory membership rule. Following the victory in *Levine I,* the opposition lawyers filed the case here before us—*Crosetto v. State Bar of Wisconsin*—hoping to curb further the State's integrated bar.

The district court stayed all its proceedings pending the outcome of *Levine I's* appeal which was then before the Seventh Circuit. Subsequently, we reversed *Levine I* on appeal, holding that *Lathrop* still controlled the constitutionality of integrated bars and allowed Wisconsin to enforce its integrated bar. *See Levine v. Heffernan,* 864 F.2d 457, 458 (7th Cir.1988) (hereinafter *"Levine II"*).[2]

---

**1.** An integrated bar is one requiring both membership and the payment of dues as conditions of practicing law within the state.

**2.** Notwithstanding *Levine II* the Wisconsin Supreme Court continued its suspension of the bar integration rule until July 1, 1992.

After *Levine II*, the *Crosetto* district court lifted its stay and the parties briefed fully Plaintiffs' motion for class certification. Judge Crabb denied Plaintiffs' motion without prejudice and then recused herself, noting that as a member of the Wisconsin bar, she would be affected by the case's outcome. The Chief Judge of the Seventh Circuit designated Judge Roszkowski from the Northern District of Illinois, to preside over *Crosetto*. Thereafter, the proceedings of *Crosetto* were again stayed pending the decision from the United States Supreme Court in *Keller v. State Bar of California,* 496 U.S. 1, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990) (posing questions regarding the constitutionality of California's integrated bar).

After the Court in *Keller* upheld California's integrated bar, the Wisconsin Bar began the process of re-integrating. In March 1991, the State Bar approved a petition to the Wisconsin Supreme Court to reinstate the State Bar as a mandatory organization. Following a public hearing, the Wisconsin Supreme Court reestablished the integrated bar, effective July 1, 1992, under a new set of Court rules and State Bar by-laws.[3] *See In Matter of State Bar of Wisconsin: Membership,* 169 Wis.2d 21, 485 N.W.2d 225 (1992).

Meanwhile, Plaintiffs continued pressing their constitutional objections through this case, *Crosetto*. In *Crosetto*, Plaintiffs alleged that before *Keller*, (1) Defendants had forced Plaintiffs to financially support the State Bar's political and other legislative activities contrary to the First and Fourteenth Amendments, (2) confiscated Plaintiffs' property without due process of law, and after *Keller* (3) Defendants implemented a dues reduction plan that still failed the most recent pronouncements of the Supreme Court of the United States. In support of their allegations, Plaintiffs contend that among other things, Defendants commingled resources between the State Bar and its political action committee failed to keep adequate records so that dissenting bar members may obtain a proper refund, and used dues money for political activities unrelated to the regulation of the legal profession.

The Justices of the Wisconsin Court filed a motion to dismiss Plaintiffs complaint against them in that, as Justices, they were absolutely immune from suit for the quasi-legislative conduct, and further, that Plaintiffs lacked any immediate threat of injury. The District Court granted the Justices' motion dismissing them from the case. Then the remaining defendants filed a motion for summary judgment. The district court granted the motion, dismissed the rest of Plaintiffs' case, and denied Plaintiffs' counter motion for a preliminary injunction against the State's integrated bar rule, 810 F.Supp. 966. After re-

---

**3.** *See* Wisconsin SCR 10.03(5)(b) and Wisconsin State Bar Bylaws, art. 1, sec. 5. The newly-enacted Wisconsin Supreme Court Rule 10.03(5)(b) provides the following:

1. The state bar may use compulsory dues only for activities reasonably intended for the purpose of regulating the legal profession or improving the quality of legal services offered by members of the state bar. Other activities must be supported by voluntary dues, user fees or other sources of revenue.

2. Prior to the beginning of each fiscal year, the state bar shall publish written notice of the activities that can be supported by compulsory dues and the activities that cannot be supported by compulsory dues. The notice shall indicate the cost of each activity, including all appropriate indirect expense, and the amount of dues to be devoted to each activity. The notice shall set forth each member's pro rata dues to be devoted to activities that cannot be supported by compulsory dues. The notice shall be sent to every member of the state bar along with the annual dues statement. A member of the state bar may withhold the pro rata portion of dues budgeted for activities that cannot be supported by compulsory dues.

3. A member of the state bar who contends that the state bar incorrectly set the amount of dues that can be withheld may deliver to the state bar a written demand for arbitration. Any such demand shall be delivered within 30 days of receipt of the members's dues statement.

4. If one or more timely demands for arbitration are delivered, the state bar shall promptly submit the matter to arbitration before an impartial arbitrator. All such demands for arbitration shall be consolidated for hearing. The costs of the arbitration shall be paid by the state bar.

5. In the event the decision of the arbitrator results in an increased pro rata reduction of dues for members who have delivered timely demands for arbitration for the fiscal year, the state bar shall offer such increased pro rata reduction to members first admitted to the state bar during that fiscal year and after the date of the arbitrator's decisions.

viewing the district court's grant of summary judgment *de novo*, *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir.1989), we vacate and remand in part, affirming the rest of the district court's judgment.

## II. Analysis

In their appeal, Plaintiffs argue the following: (A) the federal courts have subject matter jurisdiction over Plaintiffs' claims against (1) the State Bar Association as an entity, and (2) the Justices of the Wisconsin Supreme Court, (B) the doctrine of qualified immunity does not bar Plaintiffs' damage claims against the defendant Smay (the Bar's Executive Director) for his alleged official misconduct, and (C) both Wisconsin's present integrated bar and dues reduction plan fail to pass constitutional muster thus entitling Plaintiffs to injunctive relief. We shall address these arguments serially.

### A. Subject Matter Jurisdiction

Plaintiffs arguments focus on the merits of a qualified immunity defense with respect to both Smay and the State Bar. In so doing, Plaintiffs apparently have assumed that the State Bar, as an entity, is entitled to raise the qualified immunity defense. In fact, the question of whether a non-natural person, such as the State Bar, may raise a qualified

4. Not only was the non-natural person issue not briefed for us, but Plaintiffs resisted discussing this possible objection even after several pointed queries from this court during oral argument.

5. We mention this fact only because, in explicating the *Hans* doctrine, some courts have used "the Eleventh Amendment" as a short-hand substitute for the *Hans* doctrine's authority and origin. While convenient, this characterization is imprecise. The text of the Eleventh Amendment clearly does not provide for immunity when a citizen sues his resident state. U.S. Const. amend. XI. ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.").

6. The States passed the Eleventh Amendment in reaction to the Supreme Court's decision in *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793), and constitutionally overruled *Chisholm* which had allowed federal subject matter jurisdiction over a suit against a state by a citizen of another state. Nearly a hundred years later,

immunity defense has yet to be settled.[4] Today we need not grapple with this question because the Constitution of the United States may not grant us any judicial power to hear either Plaintiffs' claims against the State Bar or those against the Wisconsin Justices.

### 1. The State Bar Association

 In our federalist system of dual sovereignty the jurisdiction of the federal courts is limited to the grants of power declared in the Constitution. Plaintiffs having brought their suit in a federal court must endeavor to surmount one of the Constitutions' unavoidable jurisdictional hurdles, that of state sovereign immunity. While we note that a state's sovereign immunity sets a constitutional lid on the exercise of federal judicial power, we must also be mindful that when a citizen sues his home state the Constitution's Eleventh Amendment is evidence, but not the origin of this doctrine.[5] *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). In developing the *Hans* doctrine, the Eleventh Amendment has served as a historical framework for the Supreme Court's teaching that the Constitution never granted federal courts any judicial power over suits by a citizen against his own state.[6] Without some affirmative constitutional grant the federal courts lack any judicial

when a resident citizen attempted to sue his own state in federal court, the Court in *Hans* held that federal courts lacked subject matter jurisdiction over such a suit. The Court reasoned as follows:

"Can we suppose that, when the Eleventh Amendment was adopted, it was understood to be left open for citizens of a State to sue their own state in the federal courts, while the idea of suits by citizens of other states, or of foreign states, was indignantly repelled? Suppose that Congress, when proposing the Eleventh Amendment, had appended to it a proviso that nothing therein contained should prevent a State from being sued by its own citizens in cases arising under the Constitution or laws of the United States: can we imagine that it would have been adopted by the States? The supposition that it would is almost an absurdity on its face.

"The truth is, that the cognizance of suits and actions unknown to the law, and forbidden by the law, was not contemplated by the Constitution when establishing the judicial power of the United States." *Hans*, 134 U.S. at 15, 10 S.Ct. at 507.

power to decide a case. *See Hans,* 134 U.S. at 15, 10 S.Ct. at 507; *see also Pennhurst v. Halderman,* 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984). Therefore, when a state citizen sues an entity that happens to be an arm of that citizen's home state, then a federal court, under *Hans* and its progeny,[7] ordinarily lacks subject matter jurisdiction.[8] Of course for the *Hans* doctrine to forbid federal jurisdiction, a suit against the state bar association must appropriately be considered a suit against an arm of the state. While the actual state status of "state" bar associations will vary from state to state, the case law confirms that in several instances state bar associations will be protected by sovereign immunity.

■ The Supreme Court has never directly addressed the sovereign immunity of state bars,[9] but its approach in related areas may be helpful to the analysis. For example, in holding that the actions of a state bar association constituted enough official state action to exempt a state bar from antitrust law, the Supreme Court has noted that "the regulation of the activities of the bar is at the core of the State's power to protect the public.... Few other professions are as close to the core of the State's power to protect the pub-

lic. Nor is any trade or other profession as essential to the primary governmental function of administering justice." *Hoover v. Ronwin,* 466 U.S. 558, 569 n. 18, 104 S.Ct. 1989, 1996 n. 18, 80 L.Ed.2d 590 (1984) (citations omitted). The Court concluded that because of this close relationship, "although only the State Bar was named as a defendant in the suit, the [plaintiff's] complaint was with the State." *Id.* at 571, 104 S.Ct. at 1977.

With respect to state bar associations and sovereign immunity the lower federal courts that have addressed this issue unanimously have found particular state bars entitled to the sovereign immunity defense. *See Lewis v. Louisiana State Bar Ass'n,* 792 F.2d 493 (5th Cir.1986) (holding that federal courts lacked jurisdiction to hear a suit by a Louisianian against the Louisiana State Bar); *Bishop v. State Bar of Texas,* 791 F.2d 435 (5th Cir.1986) (holding the Texas State Bar could not be sued by a Texan); *Lupert v. California State Bar,* 761 F.2d 1325 (9th Cir.1986), *cert. denied,* 474 U.S. 916, 106 S.Ct. 241, 88 L.Ed.2d 251 (1986) (holding that the federal courts lacked jurisdiction to hear a suit by a Californian against the California State Bar); *Ginter v. State Bar of Nevada,* 625 F.2d 829, 830 (9th Cir.1980) (holding the

---

7. Though criticized, especially by the academy, the *Hans* doctrine has been repeatedly affirmed. *Monaco v. Mississippi,* 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282 (1934); *Employees v. Dep't of Pub. Health & Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *Atascadero v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *McKesson v. Div. of Alcoholic Beverages & Tobacco,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990).

8. We say ordinarily because there are exceptions to this bar which concededly make the Eleventh Amendment and *Hans* immunity peculiar jurisdictional rules. For example, Congress can abrogate state sovereign immunity, *see Welch v. Texas Department of Public Transportation,* 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); Furthermore, a state can consent to suit in federal court, *see infra* note 11 and accompanying text.

9. Neither *Keller,* 496 U.S. 1, 110 S.Ct. 2228, the Court's most recent bar-association case, nor *Bates v. State of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) (where the court also decided claims against a state bar on the merits), imply that a suit against a state bar

association is not a suit against the state for the purposes of sovereign immunity. The doctrine of sovereign immunity does not apply when, as in *Keller* or *Bates,* the Supreme Court exercises its appellate jurisdiction over a case arising from state court. *McKesson,* 496 U.S. at 27, 110 S.Ct. at 2245.

Nor can the Supreme Court's review in either *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), or *Hoover v. Ronwin,* 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984), represent an implicit holding that the jurisdictional bar of sovereign immunity does not apply when a state bar is sued in federal court. In *Goldfarb,* the Court explicitly noted: "The State Bar also contends that it is protected by the Eleventh Amendment. Petitioners dispute this contention, and the District Court had no occasion to reach it in view of its holding. Given the record before us we intimate no view on the issue, leaving it for the District Court on remand." *Id.* 421 U.S. at 792 n. 22, 95 S.Ct. at 2016. (citations omitted). In *Hoover,* the state bar association was already dismissed from the suit by the district court before the case reached the Court. 466 U.S. at 565 n. 12, 104 S.Ct. at 1993 n. 12; *see also Lathrop,* 367 U.S. 820, 81 S.Ct. 1826.

Nevada State Bar was immune from suit by a Nevadan); *Doyle v. Oklahoma Bar Ass'n*, 787 F.Supp. 189 (W.D.Okl.1992) (holding that the Oklahoma state bar association was an *instrumentality of the state*, and thus, federal courts lacked jurisdiction to hear a suit for damages by an Oklahoman).

■ We agree that a suit against a state bar association, as a general matter, may constitute a suit against the state for sovereign immunity purposes. Whether the Wisconsin State Bar, in particular, is vested with sufficient state characteristics to qualify for sovereign immunity is a factual question, however, that cannot be answered now on the record before us.[10] We therefore vacate that part of the district court's decision holding for the State Bar of Wisconsin, and remand this case for a determination of the State Bar's sovereign status.

■ After additional briefing along with any other discovery deemed appropriate, the district court must ultimately determine whether the suit against the Wisconsin State Bar Association is properly considered a suit against the state *qua* state. In making its finding the district court should consider the extent of control exercised over the Bar by the Wisconsin Supreme Court (or the State at large). *See Lewis*, 792 F.2d at 497 discussing *Bates*, 433 U.S. at 361, 97 S.Ct. at 2697, and *Hoover*, 466 U.S. at 569 n. 18, 571, 104 S.Ct. at 1995 n. 18, 1996. In this matter we agree with *Lewis*, that the analysis presented in both *Bates* and *Hoover* is applicable to questions of sovereign immunity. If the Wisconsin Supreme Court had the ultimate authority to adopt and enforce the Bar's rules in question, then a suit against the Bar challenging those rules may be not that different from a suit directly against the Wisconsin Supreme Court. *See Lewis*, 792 F.2d at 497. The district court should also consider, as additional indication of state con-

trol, whether the Wisconsin State Bar has a role completely defined by the Wisconsin Supreme Court—that is whether the Bar was acting as the agent of the Court when it promulgated the rules in question. *Id.* Also relevant is whether a judgment against the State Bar would ultimately be paid by the state's treasury. *See Paschal v. Jackson*, 936 F.2d 940 (7th Cir.1991); *Cannon v. University of Health Sciences*, 710 F.2d 351, 356 (7th Cir.1983); *see also Lewis*, 792 F.2d at 498 (holding that since the dues of the Louisiana Bar Association, an integrated bar, are *actually* state license taxes levied by the express authority of the state legislature, they are thus unavailable as damages under the doctrine of sovereign immunity). We hasten to note, however, that even when there is no risk to the state treasury, the state is immune when sued in its own name. *See Zych v. Wrecked Vessel Believed to be the Lady Elgin*, 960 F.2d 665, 669 (7th Cir. 1992) (rejecting the notion that an absence of financial impact on the state is a *per se* pass from the Eleventh Amendment's purview); *see also Green v. Mansour*, 474 U.S. 64, 72, 106 S.Ct. 423, 427, 88 L.Ed.2d 371 (1985). Thus, even without any impact on the state's treasury, the district court must consider whether the Bar occupies the position of a public agency or official, necessarily forbidding any suit in federal court. *See Lewis*, 792 F.2d at 497 (discussing *Bates*, 433 U.S. at 361, 97 S.Ct. at 2697); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989) (Sovereign immunity forbids a suit against an individual or entity who occupies the position of a state office—even if there is no fiscal impact on state funds—just as if the state had been named directly as a party to the suit.).

If after its analysis the district court finds that a suit against the Wisconsin State Bar is a suit against the State, then unless one of

---

10. The parties never addressed the issue of sovereign immunity, but because it is jurisdictional, we raise it *sua sponte*. *See Pennhurst*, 465 U.S. at 99 n. 8, 104 S.Ct. at 907 ("The limitation deprives federal courts of any jurisdiction to entertain such claims, and thus may be raised at any point in a proceeding."); *Edelman v. Jordan*, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974) (holding that a state's sover-

eign immunity "sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court."); *Shabazz v. Coughlin*, 852 F.2d 697, 699–700 (2d Cir.1988); *see also* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3524 at 170 n. 83 (2d ed. 1984), discussing *Patsy v. Board of Regents of Florida*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1981).

the recognized exceptions to a state's sovereign immunity applies here,[11] it must dismiss all of Plaintiffs' claims against the Wisconsin State Bar for lack of subject matter jurisdiction.

### 2. The State Court Justices

Plaintiffs' claims against the Justices of the Wisconsin Supreme Court must be dismissed for jurisdictional reasons. Plaintiffs concede that any prayer for retrospective relief against the Justices "in their official capacity" would lack subject matter jurisdiction.[12] However, the limited jurisdiction of the federal courts not only bars any possible retrospective claims against the Justices, but also mandates that we dismiss Plaintiffs' prayer for injunctive relief because it fails to present an Article III case or controversy.

Article III of the Constitution extends the judicial power of the United States only to real cases or controversies. U.S. Const. art. III, § 1. As a result federal courts lack the power to give advisory opinions in hypothetical cases. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Plaintiffs argue that because the Justices might someday enforce the Bar's rules, Plaintiffs have a ripe claim. We disagree. Before a plaintiff may obtain an injunction against a future enforcement he must show some substantial hardship—the enforcement must be certain and the only impediment to the case's ripeness is a delay before its eventual prosecution. *Steffel v. Thompson*, 415 U.S. 452, 462, 94 S.Ct. 1209,

1217, 39 L.Ed.2d 505 (1974) (allowing an injunction against police when the plaintiff or his friends had twice before been arrested for distributing the same handbills at the same shopping center). When pressed by the panel during oral argument Plaintiffs' counsel conceded that he was unaware of any Wisconsin lawyer ever being disciplined by the Justices for that lawyer's failure to pay dues to the integrated bar. In the absence of any real threat of harm resulting from noncompliance with the dues requirement, Plaintiffs' immediate claim is not ripe against the Justices, and must be dismissed for lack of subject matter jurisdiction. Therefore, we affirm the district court's decision to dismiss Plaintiffs' case against the Justices.

### B. Qualified Immunity

Federal courts have subject matter jurisdiction over Plaintiffs' claims against Mr. Smay, the Executive Director of the Wisconsin State Bar, sued in his individual capacity for allegedly violating Plaintiffs' First and Fourteenth Amendment rights. 28 U.S.C. § 1331. However, as an individual serving in a state office, Smay may be entitled to qualified immunity. *Abel v. Miller*, 824 F.2d 1522, 1530 (7th Cir.1987).

The doctrine of qualified immunity "is intended to provide governmental officials with the ability 'to anticipate reasonably when their conduct may give rise to liability for damages.'" *Id.* at 1533 (quoting *Anderson v. Creighton*, 483 U.S. 635, 646, 107 S.Ct. 3034, 3042, 97 L.Ed.2d 523 (1989)). In

---

11. For example, while we recognize that a general appearance by an authorized representative of the state may constitute an implied consent to suit under some circumstances, thus waiving the sovereign immunity defense, *see, e.g., Hankins v. Finnel*, 964 F.2d 853 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992), the Wisconsin State Bar may not have had the authority to effectuate such an important waiver unilaterally. *See Employees*, 411 U.S. at 285, 93 S.Ct. at 1618. The Wisconsin Constitution, art. IV, § 27 provides ["t]he legislature shall direct by law in what manner and in what court suits may be brought against the state." In interpreting this language, the Wisconsin Supreme Court has held that "a state agency or officer may not waive the state's sovereign immunity without specific authorization nor

will principles of estoppel be applied so as to deprive a state of its sovereign rights." *Lister v. Board of Regents*, 72 Wis.2d 282, 240 N.W.2d 610 (1976). In some circumstances even "the attorney general may appear on behalf of the state . . . without waiving the state's sovereign immunity to suit." Wis.Stat. § 895.46(1)(a) (1983). Whether, under the circumstance of this case the state bar waived any sovereign immunity it may have had is an issue possibly worthy of exploration on remand.

12. Brief for Appellant at 42, *Crosetto v. State Bar*, No. 92–3899 (7th Cir.1993). *See also supra* pp. 1400–02. Only prospective relief can be sought against the Justices sued in their official capacity. *See Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

*Harlow v. Fitzgerald,* the Supreme Court explained that defendants are shielded from liability by the doctrine of qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Williams v. Anderson,* 959 F.2d 1411, 1414 (7th Cir.1992). Where the affirmative defense of qualified immunity is properly raised, "the plaintiff bears the burden of establishing the existence of the allegedly clearly established constitutional right." *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.1988), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988) (citations omitted). For the qualified immunity defense to fail, "what is required is a 'sufficient consensus,' based on all relevant case law, indicating that the official's conduct was unlawful." *Landstrom v. Illinois Dep't of Children,* 892 F.2d 670, 676 (7th Cir.1990). Since Smay properly raised this defense, unless Plaintiffs can show that a sufficient consensus clearly established the existence of a violated constitutional right, Smay will receive qualified immunity from Plaintiffs' damage claims.

■ Plaintiffs have not begun to meet their burden. The constitutional rights allegedly breached by Smay were not clearly established to a sufficient legal consensus at the time of the alleged violation. Far from being clearly established in 1990, *Keller,* 496 U.S. at 1, 110 S.Ct. at 2228 (which extended the rules of *Hudson,* 475 U.S. 292, 106 S.Ct. 1066,[13] to bar associations), represented the first definitive legal statement that mandatory bar dues had the same restrictions on their use as compulsory union dues. *See Schneider v. Colegio,* 917 F.2d 620, 624 (1st Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 865, 116 L.Ed.2d 772 (1992); *see also, supra* notes 9, 12–14 and accompanying text discussing *Keller* and integrated bar dues. As the district court found, before the *Keller*

decision "even the basic issue of the applicability of First Amendment protections to lawyers in an integrated bar was open to question." *Crosetto v. State Bar,* No. 88 C 433 C, Mag. Report and Recommendation at 33 (Magis.Ct., N.D.Ill., W.Div., 1992) (hereinafter, *"Magistrate's Report"*). Notably, the California Supreme Court was reversed by the Supreme Court of the United States on this point of law as late as 1990. *See generally, Keller,* 496 U.S. at 1, 110 S.Ct. at 2228. The doctrine of qualified immunity is designed to relieve public officials from having to predict, at their own financial peril, how judges might decide future close cases. As this circuit has stated, "government employees must obey the law in force at the time but need not predict its evolution". *Greenberg v. Kmetko,* 922 F.2d 382, 385 (7th Cir. 1991). Because the law confronting Smay before 1990 did not clearly establish to a sufficient legal consensus that his activities would subject him to any liability, Smay is entitled to qualified immunity for his conduct during this period. We affirm the district court's dismissal of Plaintiffs' damage claims against Smay.

## C. Integrated Bar Dues

■ All that remains of Plaintiffs' case is their prayer for an injunction "to prevent the reintegration of the Wisconsin State Bar under the revised Wisconsin Supreme Court rules and State Bar by-laws governing legislative activities." *Magistrate's Report* at 40. After considering the merits of Plaintiffs' argument, the district court concluded that the Wisconsin rules and by-laws[14] readily met the requirements established by the Supreme Court in *Keller* and therefore denied Plaintiffs' motion. We agree.

Plaintiffs assert that the compulsory dues plan set out in the State Bar's bylaws and the Wisconsin Supreme Court's rules is facially invalid for failing to comply with *Keller* (which expanded *Hudson* to the arena of state bar associations).[15] However, as noted

---

**13.** *Hudson* prohibited, as a violation of the First Amendment, a labor union from using union dues for political contributions against union member's will.

**14.** *See supra* note 3 and accompanying text discussing SCR 10.03(b) and State Bar Bylaws.

**15.** *See supra* note 9 discussing *Keller.* The *Keller* decision singularly rejected the notion that the "[s]tate [b]ar, considered as a government agen-

by the district court, the requirements of *Keller* and *Hudson* were the foundation on which the Wisconsin rules were promulgated. *See Magistrate's Report* at 40. The language of Wisconsin's SCR 10.03(5)(b) follows the language of *Keller* in defining what activities may be funded with compulsory dues.[16] Finally, as the district court found, the new Wisconsin rules and by-laws seem to incorporate all the *Hudson* procedural requirements.[17] In *Hudson*, the Supreme Court held that in order to protect the rights of dissenting union employees, a union collecting a fair-share or agency fee must provide procedural safeguards to prevent "compulsory subsidization of ideological activity by employees who object thereto without restricting the Union's ability to require every employee to contribute to the cost of collective-bargaining activities." 475 U.S. at 302, 106 S.Ct. at 1074. The Court went on to state that such procedures must include "an adequate explanation of the basis of the fee, a reasonable prompt opportunity to challenge the fee before an impartial decision maker, and an escrow for the amounts reasonably in dispute while such challenges are pending." *Id.* at 310, 106 S.Ct. at 1077. As the district court found in *Crosetto*, each of these requirements is included in the in the new Wisconsin procedure. *Magistrate's Report* at 37–44.

The Wisconsin rules follow the law of *Keller* and *Hudson* in the following ways: (1) SCR 10.03(5)(b)(2) requires that the Bar provide written notice to all members before the beginning of each fiscal year, describing those activities the Bar has determined are chargeable and those which are non-chargeable, informing members as to the cost of those activities and describing how those amounts were calculated; (2) SCR 10.-03(5)(b)(3)–(5) sets up a procedure whereby those who contend that the calculation is incorrect may challenge the calculation and have their challenge promptly determined by an impartial arbitrator; (3) State Bar Bylaws Article 1, Section 5(b) provides that a member demanding arbitration need not pay any dues until October 31 or 15 days following the arbitrator's decision, whichever is later. Therefore because Plaintiffs have failed to identify any defect in the Wisconsin Bar's compulsory dues plan, we hold this plan constitutional both facially and as applied, and thus affirm the district court's denial of Plaintiffs' motion for injunctive relief.

### III. Conclusion

For the foregoing reasons we affirm that part of the district court's judgment to dispose of Plaintiffs' suit against the Justices of the Supreme Court and defendant Smay, vacating in part and remanding this case back to the district court for a factual determination of the status of Plaintiffs' suit with respect to the state.

AFFIRMED in part, VACATED in part, and REMANDED.

---

cy, may use dues for any purpose within the scope of its statutory authority," 496 U.S. at 7, S.Ct. at 2232, and did not represent any type of implicit recognition that the Eleventh Amendment (or the *Hans* doctrine) is inapplicable to suits against state bar associations when the Court reversed a case arising from the California Supreme Court. *Keller*, 496 U.S. at 17, 110 S.Ct. at 2237; *see also generally Bates*, 433 U.S. 350, 97 S.Ct. 2691.

**16.** In *Keller* the Supreme Court opined that "the guiding standard must be whether the challenged expenditures are necessarily or reasonably incurred for the purpose of regulating the legal profession or improving the quality of the legal service available to the people of the State", which compares closely to the language from SRC 10.03(5)(b), "[t]he state bar may use compulsory dues only for activities reasonably intended for the purpose of regulating the legal profession or improving the quality of legal services offered by members of the state bar."

**17.** *See supra* note 3 and accompanying text.