**Steven LEVINE, Plaintiff–Appellee,**

**v.**

**Chief Justice Nathan S. HEFFERNAN, et al.,**

**and**

**State Bar of Wisconsin and Stephen L. Smay, Defendants–Appellants.**

**Nos. 88–2012, 88–2013.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 30, 1988.

Decided Dec. 8, 1988.

Rehearing and Rehearing En Banc Denied Jan. 12, 1989.

John S. Skilton, Foley & Lardner, Edward S. Marion, Wisconsin Dept. of Justice, Madison, Wis., for defendants-appellants.

Steven Levine, Middleton, Wis., Amedeo Greco, Madison, Wis., for plaintiff-appellee.

Before CUMMINGS, FLAUM and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Defendants-appellants, the justices of the Wisconsin Supreme Court, and the Wisconsin State Bar Association and Stephen Smay, appeal from the district court's grant of summary judgment in favor of plaintiff-appellee Steven Levine, an attorney presently practicing law in the state of Wisconsin. The district court, faced with cross motions for summary judgment, held that the Wisconsin Supreme Court's rule requiring attorneys to join the State Bar Association as a precondition to practicing law in the state ("integrated bar") violated Levine's speech and associational rights under the first amendment to the United States Constitution. We reverse.

1. The Court's decision culminated a fifteen year debate on the merits of an integrated bar. In 1943, the Wisconsin legislature expressly urged the state Supreme Court to create an integrated bar. The Court deferred consideration of the issue until the end of World War II due to the large number of attorneys engaged in active service, but ultimately decided against an integrated bar. *In re Integration of Bar*, 249 Wis. 523, 25 N.W.2d 500 (1946). In 1956, however, the Wisconsin Supreme Court reconsidered the matter and created an integrated bar on a two year experimental basis. *In re Integration of Bar*, 273 Wis. 281, 77 N.W.2d 602 (1956). Two years later, the Court, after noting the benefits provided by the integrated bar, extended its 1956 decision indefinitely. *In re Integration of Bar*, 5 Wis.2d 618, 93 N.W.2d 601 (1958).

2. Justice Brennan, in a four-member plurality opinion, explicitly used a legitimate state interest test in concluding that the integrated bar itself was constitutional. 367 U.S. at 843, 81 S.Ct. at 1838. Justice Harlan, in a concurring opinion joined by Justice Frankfurter, concluded that the integrated bar itself was not unconstitutional and clearly indicated that the legitimate state interest test was the proper method of analysis. Although Justice Harlan did not explicitly employ a legitimate state interest test, he referred approvingly to the Court's decision in *Railway Employees v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956) a case that analyzed compulsory contributions to labor unions under a similarly deferential standard of review.—"The *Hanson* case, (citation omitted)

## I.

In 1958, the Wisconsin Supreme Court permanently integrated the state bar.[1] The Court's decision was opposed by a significant segment of the Wisconsin legal community and prompted a lawsuit that eventually reached the United States Supreme Court. In 1961, six justices of the Supreme Court, employing a legitimate state interest test, a highly deferential standard of review, concluded that Wisconsin's integrated bar did not violate the first amendment. *Lathrop v. Donahue*, 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961).[2]

In the years since *Lathrop* was decided, the character of the Wisconsin bar has changed considerably. One of the more significant changes has involved a reduction in the bar association's responsibilities in the areas of continuing legal education and attorney discipline. In 1961, continu-

decided by an unanimous Court, surely lays at rest all doubt that a state may constitutionally condition the right to practice law upon membership in an integrated bar association, a condition fully as justified by state needs as the union shop is by Federal needs." 367 U.S. at 849, 81 S.Ct. at 1841. Thus, in *Lathrop* six justices indicated that integrated bars must be analyzed under a legitimate state interest standard.

Justice Whittaker also wrote a concurring opinion in *Lathrop*. In his concurrence, Justice Whittaker concluded that integrated bars are constitutional, but did not employ a legitimate state interest test in reaching his decision. Justice Whittaker argued that the practice of law was merely a privilege granted by the state and thus could be conditioned by the state in any manner and without any justification.

The plurality opinion disagreed with the two concurring opinions over the second issue presented in *Lathrop*—where the use of compulsory dues to fund political activities violated the first amendment. The plurality opinion held that the record before the Court was insufficient on this point. The concurring opinions held that the record on this issue was sufficient and would have upheld this use of the dues. The two dissenting opinions, authored by Justices Black and Douglas, also found that the record on the second issue was sufficient and would have struck down this use of the dues as violative of the first amendment. Thus, although a majority of the Court held that the record on the second issue was sufficient, the Court could not reach a consensus on the issue.

ing legal education and attorney discipline were under the exclusive aegis of the state bar association. At present, however, the bar association does not have exclusive jurisdiction over either area.[3] Thus, compulsory membership dues fund programs in these areas to a lesser extent than in 1961.

In recent years, opposition to Wisconsin's integrated bar has become more pronounced. Although some attorneys have challenged the very notion of compulsory dues payments, much of the opposition has focused on the bar's involvement in political activities. The Wisconsin Supreme Court has responded to the latter concern by permitting attorneys who object to the bar's legislative activities to reduce their membership dues by a certain percentage.[4] The Court, however, has refused to eliminate the integrated bar. *See Matter of Discontinuation of Wis. State Bar*, 93 Wis.2d 385, 286 N.W.2d 601 (1980).

Appellee Steven Levine has been an ardent opponent of Wisconsin's integrated bar. In 1986, Levine filed a suit in the district court challenging the constitutionality of the integrated bar. The suit sought relief on alternative grounds. Initially, Levine contended that compulsory membership dues violated his speech and associational rights under the first amendment. Alternatively, Levine argued that, assuming the constitutionality of compulsory bar membership dues, the use of compulsory membership dues to fund political and ideological activities violated the first amendment, and that this defect was not cured by the dues-reduction procedure.

The district court noted the looming presence of *Lathrop* but concluded that the case was not dispositive, principally be-

cause its deferential standard of review had been replaced by a compelling state interest test in subsequent Supreme Court compelled contribution cases.[5] Believing that *Lathrop* was not a binding precedent, the court analyzed Wisconsin's current integrated bar under the "modern" compelling state interest test and held that the compulsory dues requirement violated Levine's first amendment rights.[6] Given this disposition, the district court declined to address the merits of Levine's second claim. The court entered a declaratory judgment prohibiting the state bar association from collecting membership dues but stipulated that the award was to be prospective only. Accordingly, the district court denied Levine's request for a refund of his membership dues from 1983 to 1986.[7]

## II.

■ The principal issue on appeal is whether *Lathrop* controls the disposition of this case. At the risk of restating the obvious, we note that a lower court must follow a relevant Supreme Court decision. *See United States v. Burke*, 781 F.2d 1234, 1239 n. 2 (7th Cir.1985). Thus, we must determine whether the district court has successfully distinguished *Lathrop*. We believe that it has not.

The district court ruled that *Lathrop* was not dispositive of Levine's suit "[b]ecause the Court's analysis of freedom of association claims has evolved since *Lathrop* was decided and also because the Bar has changed its character since then." *Levine v. Supreme Court of Wisconsin*, 679 F.Supp. 1478 (1988). This language, however, is amenable to various interpreta-

3. In 1976, the Wisconsin Supreme Court created the Board of Attorneys Professional Competence to administer the state's mandatory continuing legal education programs. In the same year, the Court created the Board of Attorney's Professional Responsibility to supervise the practice of law and protect the public from attorney misconduct. State bar association dues do *not* fund either committee. The state bar, however, continues to be involved in both areas.

4. Under the dues rebate procedure, bar association members are entitled to a rebate for the portion of dues spent on *legislative* activities.

5. The district court also emphasized that the character of the Wisconsin bar has changed considerably since 1961.

6. The district court rejected appellants' *res judicata*, eleventh amendment immunity and Tax Injunction Act defenses. These issues are not raised on appeal.

7. Levine does not appeal from this decision.

tions. Thus, we are left to speculate as to the district court's rationale in distinguishing *Lathrop.*

One possible interpretation of the district court's language is that subsequent Supreme Court decisions, by adopting a compelling state interest test in analyzing compulsory dues requirements, have implicitly overruled *Lathrop.* The difficulty with this interpretation is that it renders the second part of the sentence irrelevant. If *Lathrop* has been overruled, there is no need to distinguish the case on its facts.

Another possible interpretation is that *Lathrop* has not been overruled, but, due to the changed character of the Wisconsin bar, is nevertheless irrelevant to the present case. Given this fact, the district court, believing that it was writing on a *tabula rasa* in the integrated bar area, felt free to employ a compelling state interest test culled from later Supreme Court cases rather than *Lathrop*'s legitimate state interest test. This assumption, however, misconstrues the precedential value of a factually distinguishable but legally relevant Supreme Court decision.[8]

■ A lower court, when faced with a factually distinguishable but legally relevant Supreme Court decision, may employ the Supreme Court's method of analysis to render a *decision* that differs from the Supreme Court's. A lower court, however, may not employ a different standard in analyzing the different facts. In doing so, the lower court would be limiting both the Supreme Court's decision and its method of analysis to a particular set of facts. Thus, in the integrated bar area, a bar substantially similar to the Wisconsin bar of 1961 would be analyzed under the *Lathrop* standard, while a bar that differed from the Wisconsin bar of 1961 would be analyzed under a compelling state interest standard.

We do not believe that *Lathrop* or subsequent Supreme Court decisions intended this result. Moreover, we do not believe that applying divergent standards to the same problem is a sound method of consti-

tutional adjudication. Consequently, we reject the second possible interpretation of the district court's language.

A third possible interpretation is that the conjunctive sentence actually contains alternative premises. The first part of the sentence would stand for the proposition that *Lathrop* has been implicitly overruled by subsequent Supreme Court decisions. The second part of the sentence would stand for the alternative proposition that, while *Lathrop* is still good law, the present Wisconsin integrated bar is unconstitutional under *Lathrop*'s deferential standard of review. The difficulty with this interpretation is that the district court's opinion never analyzes Wisconsin's present integrated bar under the *Lathrop* standard; the opinion only analyzes the current bar under the compelling state interest standard.

In sum, we are faced with three unsatisfactory interpretations of the district court's rationale in distinguishing *Lathrop.* The first interpretation would render the district court's discussion of *Lathrop*'s factual basis irrelevant. The second interpretation would lead us to an analytically unsound result. The third interpretation is not supported by the structure of the district court's opinion but does compel us to address the two essential issues relating to *Lathrop*'s precedential effect—whether the decision has been implicitly overruled and, if not, whether it is factually distinguishable from our case. Given this virtue, we choose to adopt the third interpretation and will therefore analyze the respective issues *seriatim.*

### A.

The district court's first alternative premise for concluding that *Lathrop* does not control the disposition of this case is that *Lathrop* has been implicitly overruled by subsequent Supreme Court decisions. In reaching this conclusion, the district court initially asserted that *Lathrop* minimized the significance of the first amend-

---

**8.** A legally relevant Supreme Court decision is a decision in the identical area of the law, in this case the integrated bar area.

ment infringement occasioned by the compulsory dues requirement and therefore adopted a highly deferential standard of review. The district court then analyzed several more recent Supreme Court decisions, and read these cases as standing for the proposition that a compulsory dues requirement is a very significant infringement of first amendment rights that can only be justified by a compelling state interest. The district court concluded that *Lathrop* had adopted an outmoded method of analysis that was no longer valid.

█ In evaluating the district court's decision, we begin with the premise that only the Supreme Court may overrule one of its own precedents. *Thurston Motor Lines Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed. 2d 260 (1983). The Court, however, does not have to explicitly state that it is overruling a prior precedent in order to do so. Thus, if later Supreme Court decisions indicate to a high degree of probability that the Court would repudiate the prior ruling if given the opportunity, a lower court need not adhere to the precedent. *Olson v. Paine, Webber, Jackson & Curtis, Inc.,* 806 F.2d 731 (7th Cir.1986). Lower courts, however, out of respect for the great doctrine of *stare decisis,* are ordinarily reluctant to conclude that a higher court precedent has been overruled by implication.

█ To conclude that *Lathrop* has been implicitly overruled, we must be satisfied that "this is one of those rare cases where circumstances 'have created a near certainty that only the occasion is needed for the pronouncement [by the Supreme Court] of the doom' of an obsolete doctrine." *Olson v. Paine, Webber, Jackson & Curtis, Inc.,* 806 F.2d 731, 734 (7th Cir.1986) (quoting *Salerno v. American League of Professional Baseball Clubs,* 429 F.2d 1003, 1005 (2nd Cir.1970) *cert. denied, Salerno v. Kuhn,* 400 U.S. 1001, 91 S.Ct. 462, 27 L.Ed. 2d 452 (1971)). We do not believe that those circumstances are present in this case. First, no Supreme Court justice has

ever questioned the validity of *Lathrop.* Second, all lower courts when faced with challenges to integrated bars have expressly followed the *Lathrop* precedent. *See Hollar et al. v. Government of the Virgin Islands et al.,* 857 F.2d 163 (3rd Cir.1988); *Gibson v. The Florida Bar,* 798 F.2d 1564 (11th Cir.1986). Third, because *Lathrop* is the only Supreme Court decision in the integrated bar area, the district court's decision, unlike other cases concluding that a Supreme Court precedent has been implicitly overruled, was not based on a later Supreme Court decision in the identical area of the law.[9] Thus, the district court was forced to analogize the integrated bar to the union shop in order to reach its conclusion. *Levine,* 679 F.Supp. at 1449–1500. A lower court decision that employs analogy to conclude that a higher court precedent has been implicitly overruled, however, significantly undermines the doctrine of *stare decisis.*

Finally, we do not believe that the cases relied upon by the district court cast doubt upon *Lathrop's* validity. Given the factors delineated above, and our general reluctance to conclude that a Supreme Court decision has been overruled by implication, we would require evidence that the Supreme Court has applied a compelling state interest test in analyzing *mere* compulsory dues requirements in order to affirm the district court's decision. We do not believe that the cases cited by the district court provide this evidence.

In reaching its decision, the district court relied primarily on *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). In *Buckley,* the Court evaluated the constitutionality of the Campaign Financing Act of 1971 as amended in 1974 ("Act"). The Act, *inter alia,* placed limits on the amount of money that individuals and groups could contribute to political campaigns. The Court, in a *per curiam* opinion, held that financial contributions to political campaigns are a form of speech that is protected by the first amendment and evaluated

**9.** *Compare Norris v. United States,* 687 F.2d 899, 903 (7th Cir.1982) (concluding that *U.S. v. Frady,* 348 F.2d 84 (1965) had displaced the analysis of *Kaufman v. United States,* 350 F.2d 408 (1965) in section 2255 cases).

the Act's provisions under a compelling state interest standard.

The district court read *Buckley* as standing for the proposition that all laws that impact on financial contributions must be justified by a compelling state interest. We believe that this represents too broad a reading of the case. In our view, the *Buckley* analysis was predicated upon the type of activity that was involved, *i.e.* political campaigns. "[T]he constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272, 91 S.Ct. 621, 625, 28 L.Ed.2d 35 (1971). Thus, *Buckley* stands for the proposition that when core first amendment activity is involved, restrictions on financial contributions must be justified by a compelling state interest. *Buckley*, however, provides minimal guidance in cases not involving core first amendment values.

The district court also relied on language in two union shop cases, *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977) and *Ellis v. Brotherhood of Railway Airline & Steamship Clerks*, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984) in concluding that *Lathrop* has been implicitly overruled. In both cases, the Court stated that compulsory contribution requirements are significant infringements on first amendment rights. These statements, however, are *dicta*. *Abood* and *Ellis*, addressed the issue of whether compulsory dues payments could be used to fund certain activities; the cases did not address the issue decided by *Lathrop* —whether a compulsory dues requirement must be justified by a compelling state interest.[10] Thus, under our aforementioned exacting standard, neither case provides us with sufficient evidence to allow us to conclude that *Lathrop* has been implicitly overruled.

In sum, we conclude that based on the doctrine of *stare decisis* and our reading of later Supreme Court decisions, the Supreme Court has not implicitly overruled *Lathrop*. Consequently, lower courts must apply *Lathrop*'s method of analysis in evaluating the constitutionality of integrated bars.

### III.

■ Having determined that *Lathrop* is still good law, we must next decide whether the present Wisconsin Bar Association is substantially similar to its 1961 predecessor. If Wisconsin's present integrated bar is substantially similar to its predecessor, *Lathrop* compels us to conclude that it serves a legitimate state interest. The district court held that the diminution in the bar association's role in the areas of attorney discipline and continuing legal education altered the character of the Wisconsin bar to the point where *Lathrop* was decided on an essentially different factual record. We disagree.

In *Lathrop*, Justice Brennan's plurality opinion, in concluding that Wisconsin's integrated bar served a legitimate state interest, delineated several important activities that the bar engaged in. These activities included but were not limited to activities in the areas of continuing legal education and attorney discipline.[11] The Court, however, did not place any special emphasis on these activities. In fact, the plurality opinion, in justifying its decision, expressly noted the multifaceted character of the Wisconsin bar. 367 U.S. at 842, 81 S.Ct. at 1837. Thus, in our view, the district court overemphasized the importance of the bar's role in the areas of continuing legal education and attorney discipline to the *Lathrop* Court. This overemphasis in turn, led the district court to erroneously conclude that *Lathrop* was not a controlling precedent in this case.

10. In fact, the Supreme Court in *Ellis* noted that the petitioners *do not* and *could not* challenge the legality of mandatory dues requirements, 466 U.S. at 439, 104 S.Ct. at 1887–88 and cited to *Railway Employees v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), a case whose analysis was used by the *Lathrop* Court.

11. Other important activities included helping establish legal aid systems, engaging in public relations and funding studies of programs designed to further the economic well-being of the profession.

## IV.

We conclude that subsequent Supreme Court decisions have not implicitly overruled *Lathrop*. In addition, we conclude that *Lathrop* is a binding precedent in this case. Thus, we reverse the district court's grant of summary judgment in favor of plaintiff on his first claim and remand to the district court with instructions to enter summary judgment in favor of defendants on this issue. We, of course, express no opinion on the merits of plaintiff's second claim. Therefore, the district court's decision holding Wisconsin's integrated bar unconstitutional under the first amendment is REVERSED AND REMANDED.