James S. THIEL and Barbara E.
James, Plaintiffs–Appellants,

v.

STATE BAR OF WISCONSIN, Stephen
L. Smay, John Albert, et al.,
Defendants–Appellees.

No. 95–3442.

United States Court of Appeals,
Seventh Circuit.

Argued March 25, 1996.

Decided Sept. 3, 1996.

Steven Levine, Public Service Com'n of Wis. (argued), Madison, WI, for plaintiffs–appellants.

Daniel W. Hildebrand, Dewitt, Ross & Stevens, (argued), Madison, WI, for defendants–appellees.

Before BAUER, RIPPLE, and EVANS, Circuit Judges.

BAUER, Circuit Judge.

This case represents the latest chapter in the seemingly neverending battle between Wisconsin attorneys and the Wisconsin State Bar.[1] The plaintiffs, two Wisconsin attorneys, challenge the Bar's method for determining which activities the Bar may fund with compulsory dues. Specifically, they argue that Wisconsin Supreme Court Rule ("SCR") 10.03(5)(b)1 is unconstitutional because it permits the Bar to use compulsory dues to fund non-ideological activities which do not serve the purpose of regulating the legal profession or improving the quality of legal services.[2]

The plaintiffs' lawsuit sought a declaration that SCR 10.03(5)(b)1 is unconstitutional and that the Bar must recalculate the plaintiffs' dues for certain years to rectify the allegedly unconstitutional use of the compelled fees for non-germane, non-ideological expenditures. As a result, the plaintiffs would receive a small rebate. The Bar and the individual defendants moved for summary judgment on the merits, with the Bar adding the procedural defense that it was immune from suit under the Eleventh Amendment. The district court found the Bar immune under the Eleventh Amendment, but the court permitted the suit to proceed against the individual defendants (members of the Bar's Board of Governors responsible for administering SCR 10.03(5)(b)1) for prospective injunctive relief; that is, to enjoin the future enforcement of the allegedly unconstitutional rule. On the merits, the district court granted summary judgment for the individual defendants. We review the district court's summary judgment ruling, including its Eleventh Amendment analysis, de novo. We affirm.

■ Before proceeding to the merits, we must decide whether the Eleventh Amendment protects the Bar from suit. We begin with the observation that the Supreme Court has recently taken an "expansive view of sovereign immunity." Gorka by Gorka v. Sullivan, 82 F.3d 772, 774 (7th Cir.1996), citing Seminole Tribe of Florida v. Florida, —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The Eleventh Amendment bars suit against an entity in addition to the state itself, when the defendant is an "arm" or "alter ego" of the state. Edelman v. Jordan,

1. For a representative sample of prior skirmishes, see Lathrop v. Donohue, 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961); Crosetto v. State Bar of Wisconsin, 12 F.3d 1396 (7th Cir. 1993), cert. denied, —— U.S. ——, 114 S.Ct. 2138, 128 L.Ed.2d 867 (1994); Levine v. Heffernan, 864 F.2d 457 (7th Cir.1988), cert. denied, 493 U.S. 873, 110 S.Ct. 204, 107 L.Ed.2d 157 (1989).

2. SCR 10.03(5)(b)1 reads:

The State Bar may engage in and fund any activity that is reasonably intended for the purposes of the association. The State Bar may not use compulsory dues of any member who objects to that use for political or ideological activities that are not reasonably intended for the purposes of regulating the legal profession or improving the quality of legal services. The State Bar shall fund those political or ideological activities by the use of voluntary dues, user fees, or other sources of revenue.

415 U.S. 651, 663, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974).

The question therefore, is whether the Bar is the "state" for Eleventh Amendment purposes. We have addressed, though not resolved, this question in an earlier decision. In *Crosetto v. State Bar of Wisconsin*, 12 F.3d 1396 (7th Cir.1993), we remanded to the district court a similar challenge to the Wisconsin State Bar in order for the district court to resolve the factual question of whether the "State Bar . . . is vested with sufficient state characteristics to qualify for sovereign immunity." 12 F.3d at 1402.

In *Crosetto*, we set forth the appropriate analysis for determining whether the Eleventh Amendment bars suit against the Wisconsin State Bar in federal court. However, the plaintiffs argue that our analysis is contrary to *Hess v. Port Authority Trans–Hudson*, —— U.S. ——, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994), "the most recent decision of the U.S. Supreme Court on the issue of Eleventh Amendment immunity."[3] In particular, they argue that *Hess* stands for the proposition that the "most important factor in determining whether a state created entity is entitled to Eleventh Amendment immunity is whether a judgment against it would impact the state treasury or . . . whether the entity has an independent source of funding." Without resolving whether this is an accurate construction of *Hess*, we note that the Court more recently asserted that the "Eleventh Amendment does not exist solely to 'prevent federal court judgments that must be paid out of a State's treasury.'" *Seminole*, —— U.S. at ——, 116 S.Ct. at 1124. In fact, "the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment." *Id.;*

*see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) (sovereign immunity forbids a suit against an individual or entity who occupies the position of a state office— even if there is no fiscal impact on state funds-just as if the state had been named directly as a party to the suit.).

Given these considerations, we held in *Crosetto* that the effect on the state treasury was the least important of the three factors, and would be irrelevant if the first two weigh in favor of Eleventh Amendment immunity. 12 F.3d at 1402. The other two factors are: (1) The extent of control the Wisconsin Supreme Court exercised over the Bar; and (2) whether the Bar acted as the agent of the Wisconsin Supreme Court when it promulgated the rule in question. *Id.*

As we noted in *Crosetto*, "with respect to state bar associations and sovereign immunity the lower federal courts that have addressed this issue unanimously have found particular state bars entitled to the sovereign immunity defense." 12 F.3d at 1401 (collecting cases). The plaintiffs acknowledge, as they must, that they are facing a mountain of contrary authority, but attempt to distinguish the Wisconsin State Bar from the other bar associations found to be the state for Eleventh Amendment purposes, mainly on the ground that the Bar does not have primary responsibility for disciplining attorneys and organizing continuing legal education.

The plaintiffs' argument goes something like this: All of the bars found to have immunity under the Eleventh Amendment are *valid* "integrated" bars because they have primary responsibility for disciplining attorneys and organizing continuing legal education.[4] The Wisconsin State Bar lacks

---

**3.** The plaintiffs' attempts to avoid the strictures of our *Crosetto* analysis by relying on the district court's opinion in *Levine v. Supreme Court of Wisconsin*, 679 F.Supp. 1478, 1487–88 (W.D.Wis. 1988) are to no avail. We acknowledge Judge Crabb's ruling in *Levine* that the Eleventh Amendment did not protect the Bar, and we take her reasoning as persuasive authority. However, we also recognize that in *Levine v. Heffernan*, 864 F.2d 457 (7th Cir.1988), we reversed Judge Crabb's ruling on the merits without reaching the Eleventh Amendment issue. Thus, at the time of *Crosetto*, the issue was still open. And as

we have discussed, although *Crosetto* did not resolve the issue, it set the appropriate mode of analysis—which we unhesitatingly follow.

**4.** An "integrated" bar is an "association of attorneys in which membership and dues are required as a condition of practicing law in a State." *Keller v. State Bar of California*, 496 U.S. 1, 5, 110 S.Ct. 2228, 2231, 110 L.Ed.2d 1 (1990). In some states, like Illinois, attorneys are not required to join the state bar association in order to practice law.

those responsibilities, and therefore it is an invalid integrated bar and is not immune under the Eleventh Amendment. We are not persuaded by this distinction.

Although we acknowledge that the Bar does not have responsibility over discipline and continuing legal education, we reject the plaintiffs' contention that this strips the Bar of its state character legitimacy, thereby denying it Eleventh Amendment immunity. In *Levine v. Heffernan*, we held that "the diminution in the bar associations' role in the areas of attorney discipline and continuing legal education" did not alter the character of the Bar such that it was unconstitutional.[5] 864 F.2d at 462. Given that ruling, we are bound to treat the Wisconsin State Bar as a valid integrated bar association. Accordingly, we reject the plaintiffs' efforts to distinguish the Wisconsin State Bar from the other state bars that have Eleventh Amendment immunity. *See Crosetto*, 12 F.3d at 1401–02.

Under *Crosetto*, the first factor we consider is the Wisconsin Supreme Court's control over the Bar, and more precisely, whether the Supreme Court had the ultimate authority to adopt and enforce the Bar rule in question. The Wisconsin Supreme Court created the Bar in 1956. The Court also retains control over Bar dues and the Bar's budget in a variety of ways. *See, e.g.*, SCR 10.03(5), 10.03(5)(b), 10.05(4)(e)(4). Court rules set the deadlines within which members must enroll and pay dues. SCR 10.03(2). Those same rules also establish the penalty for nonpayment of Bar dues. SCR 10.03(6). The Court limits the ability of the Bar to spend dues on political or ideological activities. SCR 10.03(5)(b)1. The Court requires the Bar to include in each year's membership dues the amount necessary to pay the costs of the Board of Attorneys Professional Responsibility and the continuing legal education functions of the Board of Bar Examiners. SCR 10.03(5)(a). Wisconsin Supreme Court rules establish the manner in which the Bar conducts its daily business, establishes the Bar's governing bodies and offices, and defines their respective powers, functions, and duties. SCR 10.04–.08. Finally, the Court retains ultimate authority to review amendments of the Bar's bylaws. SCR 10.05(4)(a)(8). In sum, the Wisconsin Supreme Court exercises a great deal of control over the Bar.

This does not mean that the Court micromanages every aspect of the Bar. "[F]or the purposes of carrying out the purposes for which it is organized," the Bar "may sue and be sued, enter into contracts, acquire, hold, and encumber and dispose of real and personal property." SCR 10.02(1). It also deposits its funds into accounts held in the name of the State Bar of Wisconsin. Finally, it handles its own personnel matters, setting its own wage rates and classifications, provides its own pension, health insurance and other benefit plans, and pays its employees on checks drawn on State Bar accounts. Nevertheless, we conclude that the Wisconsin Supreme Court has sufficient control over the Bar to weigh in favor of invoking Eleventh Amendment immunity.

---

**5.** In *Levine*, we pointed out that irrespective of continuing legal education and attorney discipline, the Wisconsin Bar was involved in "helping establish legal aid systems, engaging in public relations and funding studies of programs designed to further the economic well-being of the profession." 864 F.2d at 462 n. 11. This list was not exhaustive. Under Wisconsin law, the Bar's purposes are

to aid the courts in carrying on and improving the administration of justice; to foster and maintain on the part of those engaged in the practice of law high ideals of integrity, learning, competence and public service and high standards of conduct; to safeguard the proper professional interests of the members of the bar; to encourage the formation and activities of local bar associations; to conduct a program of continuing legal education; to assist or support legal education programs at the preadmission level; to provide a forum for the discussion of subjects pertaining to the practice of law, the science of jurisprudence and law reform and the relations of the bar to the public and to publish information relating thereto; to carry on a continuing program of legal research in the technical fields of substantive law, practice and procedure and make reports and recommendations thereon within legally permissible limits; to promote the innovation, development and improvement of means to deliver legal services to the people of Wisconsin; to the end that the public responsibility of the legal profession may be more effectively discharged.
SCR 10.02(2).

Next, we consider whether the Bar was acting as the agent of the Wisconsin Supreme Court when it promulgated the rule in question. The Wisconsin Supreme Court has ultimate authority over SCR 10.03(5)(b)1. Although the Bar enforces this Rule, the Court established the Rule and has the sole authority to adopt and amend it. We agree with the district court that "the Bar's role is completely defined by the Court" and that "the Bar acts as an agent of the Court." This factor also weighs in favor of Eleventh Amendment immunity. Given our conclusion that the first two *Crosetto* factors weigh in favor of Eleventh Amendment immunity, we need not consider whether a judgment against the Bar would be satisfied by State funds. *Crosetto*, 12 F.3d at 1402 (citations omitted).

■ The plaintiffs further argue that even if the Bar is theoretically immune under the Eleventh Amendment, Wisconsin waived the sovereign immunity defense because the Wisconsin Supreme Court Rules permit the Bar to sue and be sued, and to act in a proprietary capacity. SCR 10.02(1). However, in order to waive Eleventh Amendment immunity, a state statute or constitutional provision must do so in explicit language, stating not "merely whether [the State] may be sued, but *where* it may be sued." *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985) (citation omitted) (emphasis added). "In order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court.*" *Id.* at 241, 105 S.Ct. at 3146–47 (emphasis in original).

■ The plaintiffs cite to *Bahr v. State Investment Board*, 186 Wis.2d 379, 521 N.W.2d 152 (Ct.App.1994) as supporting their waiver theory. In *Bahr*, the Wisconsin Court of Appeals held that under Wisconsin law, the State waives sovereign immunity when it creates an agency as an "independent going concern ... with independent proprietary powers and functions." 186

Wis.2d at 388, 521 N.W.2d 152. The plaintiffs argue that this description fits the Bar to a T. That may be, although we doubt it. Regardless, a state's waiver of immunity to suit in state court is not controlling on the issue of Eleventh Amendment immunity. *Port Authority Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 306, 110 S.Ct. 1868, 1873, 109 L.Ed.2d 264 (1990); *NBD Bank, N.A. v. Bennett*, 67 F.3d 629, 634 (7th Cir.1995); cf. *Keller v. State Bar of California*, 496 U.S. 1, 11, 110 S.Ct. 2228, 2234–35, 110 L.Ed.2d 1 (1990). The plaintiffs cannot point to any Wisconsin statute or constitutional provision that waives the Bar's sovereign immunity for Eleventh Amendment purposes. We conclude, therefore, that Wisconsin has not waived the Bar's sovereign immunity in federal court, and the Eleventh Amendment precludes the plaintiffs' suit against the Bar.

■ This does not end the case entirely, however. The district court ruled that the plaintiffs' claim against the individual defendants for prospective injunctive relief could proceed. Although the district court did not cite any authority for this ruling, it was proper pursuant to *Ex Parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908). Under *Ex Parte Young*, when a state official takes actions contrary to the Constitution, he is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Frances J. v. Wright*, 19 F.3d 337, 342 (7th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 204, 130 L.Ed.2d 134 (1994), *quoting Ex Parte Young*, 209 U.S. at 160, 28 S.Ct. at 454. Therefore, we consider the merits of the plaintiffs' claims against the individual defendants for prospective injunctive relief.

Wisconsin Supreme Court Rule 10.03(5)(b)1 prohibits the Bar from using compulsory dues for political or ideological expenditures that are not reasonably intended for the purpose of regulating the legal profession or improving the quality of legal services.[6] The plaintiffs challenge the Bar's use of compulsory fees for non-germane, non-ideological expenditures. Both parties concede that our analysis begins with *Keller v.*

---

6. We will refer to expenditures reasonably intended for the purpose of regulating the legal profession or improving the quality of legal services as "germane." Any other bar expenditures are "non-germane."

*State Bar of California.* In *Keller,* the Court held that an integrated state bar association's use of compulsory dues to finance political and ideological activities which are not germane to the Bar's purposes of regulating the profession and improving the quality of legal services violates the members' First Amendment free speech rights. 496 U.S. at 13–14, 110 S.Ct. at 2235–36. The Court's holding was clear: "[The State Bar] may not ... fund activities of an ideological nature which fall outside of ... [germane] activit[ies]." *Id.*

Both parties contend that *Keller* supports their argument. The Bar concentrates on *Keller*'s references to **ideological** or **political** expenditures to argue that integrated Bar expenditures for non-political or non-ideological activities do not implicate the First Amendment. In contrast, the plaintiffs focus on *Keller*'s insistence that Bar expenditures be limited to germane activities in support of their argument that non-germane Bar expenditures are verboten regardless of whether they are funding ideological or political activities. Even assuming some merit to the plaintiffs' argument, it does not represent the current state of the law.

 Initially, we must clarify which constitutional right applies in this case. The plaintiffs brought their lawsuit under the First, Fifth, and Fourteenth Amendments.[7] We hold that only the First Amendment is implicated.[8] In doing so, we reject the plaintiffs' contention that a portion of our decision in *Hudson v. Chicago Teachers Union Local No. 1,* 743 F.2d 1187 (7th Cir.1984), *aff'd.* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986) controls this case. If we were dealing solely with our decision in *Hudson,* our ruling might be different. However, our judicial system is hierarchical, and we take our instructions from the Supreme Court. *See Levine,* 864 F.2d at 459.

In *Hudson,* this court held that the First Amendment precluded mandatory organizations (in that case a labor union) from using compulsory dues to support non-germane ideological or political causes. 743 F.2d at 1194. Furthermore, we held that the Fourteenth Amendment prohibited the labor union from using compulsory dues to support non-germane activities even if non-political or non-ideological. *Id.* The Supreme Court granted certiorari and affirmed the first holding. *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). However, the Court rejected our application of the Fourteenth Amendment:

> As in *Abood v. Detroit Board of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977) we analyze the problem from the perspective of the First Amendment concerns. We are convinced that, in this context, the procedures required by the First Amendment also provide the protections necessary for any deprivation of property.... [W]e find it unnecessary to resolve any question concerning nongermane, nonideological expenditures. Unlike the Seventh Circuit, we are not convinced that resolution of the constitutional non-germaneness question will lead to appreciably different procedural requirements, and we thus find no need to reach that constitutional question.

*Hudson,* 475 U.S. at 304 n. 13, 106 S.Ct. at 1074 n. 13. Since the Court's decision in *Hudson,* every court that has considered this type of case has looked at it exclusively through a First Amendment lens. We follow suit.

 The relevant decisions taken together hold that the only Bar (or closed shop union) expenses subject to First Amendment challenge are those with an ideological or political tinge. *See, e.g., Lehnert v. Ferris Faculty Ass'n,* 500 U.S. 507, 522, 111 S.Ct. 1950, 1960–61, 114 L.Ed.2d 572 (1991); *Keller,* 496 U.S. at 13–14, 110 S.Ct. at 2235–36; *Ellis v. Brotherhood of Railway Airline & Steamship Clerks,* 466 U.S. 435, 455, 104 S.Ct. 1883, 1895–96, 80 L.Ed.2d 428 (1984); *Gilpin v. AFSCME, AFL–CIO,* 875 F.2d 1310, 1312 (7th Cir.), *cert. denied,* 493 U.S.

---

**7.** The plaintiffs have not presented any authority supporting their novel application of the Fifth Amendment's takings clause to this case and, like the district court, we reject their Fifth Amendment claim out of hand.

**8.** Technically, of course, the Fourteenth Amendment is relevant for the limited purpose of incorporating the First Amendment. *McIntyre v. Ohio Elections Com'n,* —— U.S. ——, —— n. 1, 115 S.Ct. 1511, 1514 n. 1, 131 L.Ed.2d 426 (1995).

917, 110 S.Ct. 278, 107 L.Ed.2d 258 (1989); *Ping v. NEA,* 870 F.2d 1369, 1370 (7th Cir. 1989). As the Court stated in *Ellis:*

> [T]he fact that the [Bar member] is forced to contribute [to non-ideological, nongermane activities] does not increase the infringement of his First Amendment rights already resulting from the compelled contribution to the [Bar]. Petitioners may feel that their money is not being well-spent, but that does not mean that they have a First Amendment complaint.

466 U.S. at 456, 104 S.Ct. at 1896; *see also Keller,* 496 U.S. at 13–14, 110 S.Ct. at 2235–36. Accordingly, we hold that the First Amendment does not prohibit the Bar from funding non-ideological, non-germane activities with compelled dues. *Accord, Schneider v. Colegio de Abogados de Puerto Rico,* 917 F.2d 620, 631–32 (1st Cir.1990), *cert. denied,* 502 U.S. 1029, 112 S.Ct. 865, 116 L.Ed.2d 772 (1992).

Contrary to the plaintiffs' suggestion, our conclusion will not work a tremendous hardship on them. At oral argument, we asked plaintiffs' counsel if this case involved a challenge to any particular Bar expenditure. Given plaintiffs' willingness to fight the Bar tooth and nail on any viable legal claim, and given their argument that the Wisconsin Bar is just a tip of germane activities on top of a non-germane iceberg, we were prepared for a litany of non-germane outrages. And, in fact, plaintiffs' counsel stated (as had the plaintiffs in their brief), that they were challenging not only the rebate process but also had included in their complaint a number of specific examples of troubling expenditures to illustrate their point.

We have examined each expenditure and do not see how they support any of the plaintiffs' claims. The plaintiffs suggest all of the following are non-germane, albeit nonideological: The *Bill of Rights Pamphlet,* Economics of Practice Survey, Gavel Awards, Lawyers Concerned for Lawyers, Local Bar Grants, Mock Trial Competition, and Wisconsin Law Foundation. At oral argument, the Bar's counsel explained briefly the focus of each of these activities. Lawyers Concerned for Lawyers assists alcoholic lawyers. The Bar gives Gavel Awards to reporters for writing on law-related topics, and distributes the *Bill of Rights Pamphlet,* an educational document, to pre-college students. The Wisconsin Law Foundation co-sponsors the *Bill of Rights Pamphlet* and the Mock Trial Competition. Finally, the Economics of Practice Survey helps lawyers address compelling business decisions about the practice of law. All of these, it seems, are geared towards improving the quality of legal services in Wisconsin. Under *Keller,* they are germane and may be funded by compulsory dues, regardless of whether they are ideologically oriented.

To summarize: The State Bar is immune from suit under the Eleventh Amendment. The plaintiffs' suit for prospective injunctive relief against the individual defendants is cognizable under the First Amendment, but neither the Fifth nor the Fourteenth Amendments are relevant in this context. Finally, we reject the plaintiffs' challenge to the Bar's rebate policy vis-a-vis non-germane, nonideological expenditures because the process does not violate the First Amendment. We find no constitutional problem with SCR 10.03(5)(b)1.

*Conclusion*

For the foregoing reasons, we affirm the district court's entry of summary judgment in favor of the defendants.

AFFIRMED.

RIPPLE, Circuit Judge, concurring.

I join the judgment of the court and agree with much of what Judge Bauer has said in his fine opinion. I write separately because a note of caution is necessary with respect to two aspects of today's holding.

1.

Courts ought to tread cautiously when asked to apply the Eleventh Amendment to state bars. The present case is a relatively easy one, but others well may be less clearcut. Here, there can be little question that, in promulgating the rule in question, the Wisconsin State Bar was acting as an arm of state government and therefore enjoys the protection of the Amendment. As the court notes, and as the cases collected in our earlier opinion in *Crosetto v. State Bar of Wisconsin,* 12 F.3d 1396, 1401–02 (7th Cir.1993),

*cert. denied,* —— U.S. ——, 114 S.Ct. 2138, 128 L.Ed.2d 867 (1994), amply demonstrate, there is unanimity among the circuits that have been required to rule on this point. I do not understand the court to hold today, however, that the same result would necessarily obtain if the activity of the bar were of a different nature in which the governmental function was not as readily identifiable. As Chief Justice Rehnquist noted in *Keller v. State Bar of California,* 496 U.S. 1, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990), characterizing a state bar as a "governmental agency" is an analogy not without its limitations. *Id.* at 11–12, 110 S.Ct. at 2234–35. State bars can be "a good deal different from most other entities that would be regarded in common parlance as 'governmental agencies.'" *Id.* at 11, 110 S.Ct. at 2234. They not only participate in the process of governance of the profession, but also play a role substantially analogous to that of a union for its members. *Id.* at 12, 110 S.Ct. at 2235. In this latter capacity, their governmental character is not as obvious and ought to be examined critically before the absolute shield of Eleventh Amendment immunity is cast around its activities.

2.

The multi-faceted nature of bar activities also ought to signal caution when we are asked to identify those activities for which it is permissible to use obligatory dues. With respect to this issue, this case again presents us with a relatively straightforward situation that does not present the complications that other bar association activities might present and upon which the guidance of the Supreme Court is not yet clear. Here, all of the activities of which the plaintiffs complain fit quite comfortably within the category of non-ideological, nonpolitical activities that are germane to the regulation of the legal profession or the improvement of the quality of legal services. Like the Supreme Court in *Keller v. State Bar of California,* 496 U.S. 1, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990), we are not confronted here with a situation in which the bar can be said to be engaging in nonpolitical, non-ideological activities that are also completely divorced from those statutory purposes that justify mandatory dues. Therefore, we need not decide whether attorneys dissenting from the use of their dues for such purposes have the right to distinctive procedural remedies to ensure that their funds are not used for such a purpose. To suggest that this issue has been resolved by the Supreme Court, however, requires that we ask its footnote in *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 304 n. 13, 106 S.Ct. 1066, 1074 n. 13, 89 L.Ed.2d 232 (1986), to bear far too much weight. Certainly, the same procedural protections that ferret out activities of an ideological and political nature will also identify nongermane activities that are not ideological or political. But that does not mean necessarily that such nongermane activities need not be identified or that they can be supported by mandatory dues. Until the Supreme Court speaks more definitively, all we can say, and all we need say in this case, is that we ought not give the term "germane" a crabbed reading. Like a union, a bar association must have "a certain flexibility in its use of compelled funds." *Ellis v. Brotherhood of Ry., Airline and S.S. Clerks, Freight Handlers, Express and Station Employees,* 466 U.S. 435, 456, 104 S.Ct. 1883, 1896, 80 L.Ed.2d 428 (1984).

I join the judgment of the court.