**JMB GROUP TRUST IV, an Illinois Trust, Heitman/JMB Institutional Advisors, an Illinois partnership, Jerome L. Claeys III, Charles H. Wurtzebach, Richard J. Kately, Stephen Perlmutter, and Norman Perlmutter, not individually but as Trustees of JMB Group Trust IV, Plaintiffs,**

v.

**PENNSYLVANIA MUNICIPAL RETIREMENT SYSTEM, Defendant.**

**No. 96 C 7791.**

United States District Court, N.D. Illinois, Eastern Division.

Dec. 19, 1997.

Brian L. Crowe, City of Chicago, Law Dept., Chicago, IL, Mara Stacy Georges, Rock, Fusco, Reynolds, Crowe & Garvey, Ltd., Chicago, IL, for JMB Group Trust IV.

Don H. Reuben, Jeffrey Peter DeJong, Jane B. McCullough, Altheimer & Gray, Chicago, IL, for Heitman/JMB Institutional Advisors, Jerome L. Claeys, III, Charles H. Wurtzebach, Richard Kateley, Stephen Perlmutter and Norman Perlmutter,

Bradley B. Falkof, Brian Wayne Troglia, Melissa Ann Vallone, Barnes & Thornburg, Chicago, IL, Charles J. Bloom, Stevens & Lee, Wayne, PA, William P. Thornton, Jr., Reading, PA, for Pennsylvania Mun. Retirement System.

Ronald L. Marmer, Jerold Sherwin Solovy, Timothy J. Chorvat, Jenner & Block, Chicago, IL, for JMB Institutional Realty Corp., John Lillard, Judd Malkin, Neil Bluhm, Bert Glazov and JMB Inst. Advisors.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

On October 30, 1996, this civil action was filed in the Circuit Court of Cook County, Illinois, County Department, Chancery Divi-

sion, Case No. 96–CH–11885. It comes before this court on a Notice of Removal filed on November 26, 1996 under 28 U.S.C. §§ 1441, 1446 (1997). Defendant claims that the U.S. District Court has original jurisdiction of the action under the diversity statute, 28 U.S.C. § 1332 (1997). The suit involves a state law claim for declaratory relief concerning the rights and liabilities of the parties under the trust agreement and management agreement of JMB Group Trust IV. Plaintiffs have moved to remand this action to state court under 28 U.S.C. § 1447 (1997) or dismiss it under Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction over the subject matter. The court grants Plaintiffs' motion to remand this case to the Circuit Court of Cook County, Illinois, under 28 U.S.C. § 1447.

## I. BACKGROUND

Defendant Pennsylvania Municipal Retirement System (PMRS) is a pension fund system set up by the Commonwealth of Pennsylvania to provide retirement benefits for municipal employees spread throughout the Commonwealth who voluntarily choose to participate in the system. Plaintiff JMB Group Trust IV (JMB) is a trust in which the Defendant has invested some of its funds for the benefit of its pensioners. The complaint alleges a wrongful effort by Defendant to obtain a secret agreement from Plaintiff Heitman/JMB Institutional Advisors (Heitman/JMB) which would require Heitman/JMB and the Trustees of JMB Group Trust IV (the Trustees) to breach their fiduciary duties to the Trust's other beneficiaries. Plaintiffs are requesting declaratory relief concerning the rights and liabilities of the parties and the propriety of certain past actions by the Trustees under the trust agreement and management agreement, as well as a declaration of the fair value of the Trust's real property.

In its Notice of Removal, Defendant claims that the federal district court may exercise jurisdiction over this action under the diversity statute, 28 U.S.C. § 1332. Defendant claims that all Plaintiffs are citizens of Illinois, which is undisputed. Defendant also claims Plaintiffs are all citizens of a different state than Defendant. On December 23, 1996, Plaintiffs filed a motion to remand or dismiss the action. Plaintiffs claim that the parties are not diverse because Defendant is an agency of the Commonwealth of Pennsylvania, and therefore not a citizen of any state, defeating diversity. They also argue that the Eleventh Amendment[1] prevents this court from exercising jurisdiction over Defendant because the PMRS is allegedly a state agency. From these assertions, they argue that the district court has no jurisdiction over the subject matter of the case, requiring the court to remand or dismiss the action entirely.

## II. DISCUSSION

The removal statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" may be removed to the district court. 28 U.S.C. § 1441(a) (1997). The diversity statute states in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions ... between—(1) citizens of different states ..." 28 U.S.C. § 1332(a) (1997). Defendant claims it may remove this case to federal court because the parties are diverse—Plaintiffs are citizens of Illinois and Defendant is allegedly a citizen of Pennsylvania. The Plaintiffs claim that no diversity exists—Plaintiffs are citizens of Illinois and the Defendant is not a citizen of any state because it is allegedly a state agency.

The Seventh Circuit has found it to be "well settled" that a state is not a citizen for purposes of diversity. *Indiana Port Commission v. Bethlehem Steel Corporation*, 702 F.2d 107, 109 (7th Cir.1983) (quoting *Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231 (1894)). The court goes on to explain how subdivisions of a state should be treated for purposes of diversity:

---

1. The Eleventh Amendment to the Constitution of the United States provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

It is equally well established law that "a political subdivision of a state, unless it is simply 'the arm or alter ego of the state,' is a citizen of the state for diversity purposes." *Moor v. County of Alameda,* 411 U.S. 693, 717, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973) (citation omitted). The "alter ego" status of a political subdivision is generally determined by examining state law. 411 U.S. at 718–20, 93 S.Ct. at 1800. Thus, diversity jurisdiction is present here only if the [Indiana Port Commission] is an entity which is separate and distinct from the state of Indiana.

*Id.* The court then discussed the posture of the Indiana Port Commission under Indiana law to determine whether it was separate and distinct from the State of Indiana. In the instant case, the court is not fortunate enough to have found decisions from the Pennsylvania courts which give guidance on the status of the PMRS under Pennsylvania law.

The Seventh Circuit found itself in a similar quandary in the case of *Adden v. J.D. Middlebrooks,* 688 F.2d 1147 (7th Cir.1982), involving the question of whether the Louisiana Department of Corrections (the Department) and the Louisiana Correctional and Industrial School (LCIS) were separate and distinct from the State of Louisiana. In that case, the parties presented the court with the question of whether the Department and the LCIS were considered to be the State both for the purpose of defeating diversity and also for purposes of the Eleventh Amendment (as in the instant case). The court, however, combined its analysis of these two issues, applying the same test to both of them: That is, whether the LCIS and the Department were "alter-egos" of the State of Louisiana. *See Adden,* 688 F.2d at 1153, 1154. This court shall also address both issues together, as they require the court to answer the same question: That is, whether the PMRS is an "alter-ego" of the Commonwealth of Pennsylvania. Eleventh Amendment cases are generally more profuse than those dealing with the question for diversity purposes, therefore the court will look to these cases to answer the question at hand.

The Eleventh Amendment "prohibits federal courts from entertaining suits by private parties against States and their agencies." *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114 (1978). Previously, courts looked to a host of factors to determine whether a political subdivision of a state was an agency of the state and thereby immune from suit in federal court. One of these factors was whether a judgment against the entity would have to be paid out of the state treasury. *See Adden,* 688 F.2d at 1153. Subsequent cases have altered that analysis, however, by determining that the effect of a judgment on the state treasury is irrelevant if other factors weigh in favor of finding that a certain entity is an agency or "alter-ego" of the state. *Thiel v. State Bar of Wisconsin,* 94 F.3d 399, 401 (7th Cir.1996) (quoting *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). The two other factors which a district court must weigh in order to determine whether an entity is entitled to Eleventh Amendment immunity are: (1) the extent of control exercised over the entity by the state, and (2) whether the entity has a role which is completely defined by the state, i.e. whether it acts as an agent of the state. *Crosetto v. State Bar of Wisconsin,* 12 F.3d 1396, 1402 (7th Cir.1993), *cited with approval in Thiel,* 94 F.3d at 401. The Seventh Circuit ultimately found in *Thiel,* after examining the extent of control wielded by the Wisconsin Supreme Court over the State Bar, as well as examining the factors which establish the State Bar as an agent of the supreme court, that the State Bar was entitled to Eleventh Amendment immunity. In order to answer the same question in the instant case, this court must therefore examine the extent of control the Commonwealth of Pennsylvania exercises over the PMRS under Pennsylvania law, and also whether the PMRS acts as an agent of the Commonwealth in providing retirement benefits for municipal employees. Both of these questions may be answered by looking to a common set of factors, which the court will now examine.

The board of the PMRS consists of the State Treasurer, the Secretary of the Commonwealth, and nine other members who are

all appointed by the Governor of the Commonwealth. Pa. Stat. Ann. tit. 53, § 881.103 (West 1997). Pennsylvania law further provides that each member of the board shall take an oath of office which includes an oath that he will not "knowingly violate or willingly permit to be violated any of the provisions this act." *Id.* The compensation of the board members is fixed by the board consistent with the "standards established by the Executive Board of this Commonwealth[.]" Pa. Stat. Ann. tit. 53, § 881.104(1) (West 1997). The Pennsylvania statutes also provide that "[a]ll moneys and securities in the fund shall be placed in the custody of the State Treasurer for safekeeping ..." Pa. Stat. Ann. tit. 53, § 881.109 (West 1997). The board must "prepare and approve a budget covering the administrative expenses of this act." Pa. Stat. Ann. tit. 53, § 881.112 (West 1997). The administration of the PMRS must also be audited annually, and a report of the audit must be made to the General Assembly. *Id.* The secretary of the board is required to submit a proposed budget to the Senate and House Local Government Committees for every fiscal year, at which time the respective committees, according to the statute, meet to review the budget document. *Id.* The budget is only approved if the committees take no action on the proposed budget within sixty days of November 1, the date on which the proposed budget is due. *Id.* Furthermore, "[t]he retirement allowance and the contributions of members to the fund, all contributions returned to contributors under the provisions of this act and the moneys in the fund created by this act, shall be exempt from any State or municipal tax ..." Pa. Stat. Ann. tit. 53, § 881.115 (West 1997). Finally, the PMRS may adopt rules and regulations with the advice of the Attorney General which "may be required for the proper administration of the fund created by this act and the several accounts thereof, and for the transaction of the business of the board[.]" Pa. Stat. Ann. tit. 53, § 881.104(10) (West 1997).

Even though the court finds that the board of the PMRS is entitled to sue in its own name to recover sums which are due to the fund, Pa. Stat. Ann. tit. 53, § 881.111 (West 1997), its duties and responsibilities are otherwise totally defined and limited by the Commonwealth of Pennsylvania under the provisions of the Pennsylvania Code, as shown above. Furthermore, it clearly acts as an agent of the Commonwealth since all of the board's members are either Commonwealth officials acting *ex officio*, or appointees of the Governor. The sole purpose of the PMRS is to carry out its mandate as it is defined in the enacting legislation which created the PMRS. Notably, the Seventh Circuit found in *Thiel* that the State Bar of Wisconsin was entitled to Eleventh Amendment immunity in spite of factors which demonstrated a greater level of autonomy for the State Bar than that which exists on behalf of the PMRS in the instant case. *See Thiel,* 94 F.3d at 402.

The Supreme Court recently applied the same general factors in determining that the St. Louis Board of Police Commissioners was not an "arm of the State" of Missouri for Eleventh Amendment purposes. The Court found that although the Board of Police Commissioners consists of five members, four of whom are appointed by the Governor, the Board is "not subject to the State's direction or control in any other respect." *Auer v. Robbins,* 519 U.S. 452, —— n. 1, 117 S.Ct. 905, 908 n. 1, 137 L.Ed.2d 79 (1997). Because this court finds that the PMRS is indeed subject to the direction and control of the Commonwealth of Pennsylvania to a great degree, and that it acts as agent of the Commonwealth in performing its duties, the court need not address whether a judgment against the PMRS would have an effect upon the Pennsylvania State Treasury. *See Thiel,* 94 F.3d at 403 (citing *Crosetto,* 12 F.3d at 1402). Thus, the court finds that the PMRS is an "arm" or "alter-ego" of the Commonwealth of Pennsylvania for purposes of both defeating diversity and applying Eleventh Amendment immunity.

■ Although this determination is sufficient to establish that no diversity exists under 28 U.S.C. § 1332, the court, under an Eleventh Amendment inquiry, must ask whether two exceptions apply to a state's claim of immunity:

First, a state may by unequivocal language waive the protections of the eleventh amendment and thereby consent to suit in federal court. *See, e.g., Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). Second, Congress may by unequivocal language use its enforcement powers under the fourteenth amendment to abrogate the states' eleventh amendment immunity. *See id.*

*Kroll v. Board of Trustees of University of Illinois,* 934 F.2d 904, 907 (7th Cir.1991). Of course, the second exception is irrelevant to the court's determination here, as no congressional abrogation of Eleventh Amendment immunity exists in actions arising exclusively under state law. Under the first exception, the Supreme Court has stated that a state's consent to suit in federal court must be "stated by the most express language or by such overwhelming implication from the text as to leave no room for any other reasonable construction." *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 239–40, 105 S.Ct. 3142, 3145–46, 87 L.Ed.2d 171 (1985).

In the instant case, the Commonwealth of Pennsylvania has statutorily waived its sovereign immunity and consented to suit in certain of its own courts. However, the very legislation which makes such suits possible also includes the following provision:

"Federal courts.—Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."

Pa. Stat. Ann. tit. 42, § 8521 (West 1997). Therefore, the court finds that the Commonwealth of Pennsylvania has not waived its sovereign immunity in federal court, and this court may not exercise jurisdiction over the PMRS which is an "arm" or "alter-ego" of the Commonwealth of Pennsylvania both for purposes of the Eleventh Amendment and also for the purpose of defeating diversity jurisdiction under 28 U.S.C. § 1332.

█ Finally, Plaintiffs ask the court either to remand this action to state court or, in the alternative, to dismiss it under Rule 12(b)(1). The statute which governs the procedure to be followed after removal, states in part that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c) (1997). The mandatory language of § 1447 directs this court, if it finds that it has no jurisdiction over the subject matter, to remand the case to state court rather than dismissing it. Therefore this action is remanded to the Circuit Court of Cook County, Illinois.[2]

ORDERED: Plaintiff's motion to remand is granted. This action is remanded to the Circuit Court of Cook County, Illinois.

---

**2.** The court recognizes that the result in this case may be seen as perverse by those who object that the Eleventh Amendment was intended to be a protection for the states rather than a device used by adverse parties to remand suits against states in federal court to the foreign courts of a sister state. The result, however, is inevitable due to the Supreme Court decision in *Nevada v. Hall,* 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979), which states that state sovereign immunity does not extend to suits against a state which are brought in the courts of a sister state. At least one subsequent decision of the Court, however, has implicitly questioned the rationale in that case by citing with approval the reasoning of the dissenters. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 98 n. 7, 100 n. 10, 104 S.Ct. 900, 907 n. 7, 907 n. 10, 79 L.Ed.2d 67 (1984).