284 F.3d 1040
 Chuck GARDNER, Plaintiff-Appellant,
v.
STATE BAR OF NEVADA; Board of Bar Governors; Ann Bersi; Vincent A. Consul; Michael D. Davidson; Cal R.X. Dunlap; N. Patrick Flanagan; Neil G. Galatz; Rew R. Goodenow; Alan J. Lefebvre; Ann Price McCarthy; John H. Mowbray; Thomas F. Pitaro; Dan Polsenberg; Andrew J. Puccinelli; John Paul Schlegelmilch; Gloria J. Sturman; C. Coe Swobe, in their official capacities, Defendants-Appellees.
 No. 01-15152.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted February 13, 2002.
 Filed March 21, 2002.
 
 Chuck Gardner, Las Vegas, NV, pro se, for the plaintiff-appellant.
 Rob Bare, Las Vegas, NV, for the defendants-appellees.
 Appeal from the United States District Court for the District of Nevada, Justin L. Quackenbush, Senior Judge, Presiding.
 Before D.W. NELSON, NOONAN and HAWKINS, Circuit Judges.
 OPINION
 NOONAN, Circuit Judge.
 Chuck Gardner appeals the judgment of the district court for Nevada denying his motion for a preliminary injunction against the State Bar of Nevada et al. (the State Bar) and dismissing his complaint with prejudice. Gardner sought the injunction to prevent the State Bar from conducting a public relations campaign. We hold that the campaign does not violate Gardner's right under the First Amendment not to be compelled to contribute to the expression of an idea he does not endorse or his right of freedom of association. Accordingly, the judgment of the district court is affirmed.
 FACTS
 The State Bar is a Nevada corporation under "the exclusive jurisdiction and control of the supreme court." Nevada Supreme Court Rule, 76(1). The State Bar governs the legal profession in the state, subject to the approval of the Nevada Supreme Court. Id. No person may practice law as an officer of a court of the state "who is not an active member" of the State Bar. Id. 77. Among the purposes of the State Bar is "to advance public understanding of the law, the system of justice and the role of lawyers". State Bar By-law, sec. 2.1(j).
 In 1997, the Nevada Supreme Court appointed a committee on community relations. On October 6, 1997, this committee reported "not only a serious public perception problem for Nevada's justice system but also a lack of coordinated proactive measures to counter negative perceptions." The committee recommended that "Nevada's justice system" seek innovative ways "to improve its image."
 
 
 1
 In response to this report, the Board of Governors, in March 1998, approved a public information and education campaign and the hiring of a public relations person to conduct it. $200,000 were budgeted in furtherance of this campaign. The Professionalism Committee of the State Bar adopted as a campaign message "Nevada Lawyers — Making the Law Work for Everyone."
 
 
 2
 In December 1999, the Board of Governors solicited comments on the campaign from members of the bar. Of six letters received in response, three were critical. Taking account of the criticism, the State Bar changed the message so that it read "Nevada Lawyers — Striving To Make The Law Work for Everyone." This slogan has appeared on billboards, on radio and television commercials, and on all bar publications, including Gardner's bar certification card. Gardner, a member of the bar, took note that his bar dues were used to fund the campaign.
 
 PROCEEDINGS
 
 3
 On May 17, 2000, Gardner sued in district court to enjoin the campaign, alleging that it violated his rights of freedom of speech and association. He also alleged that the campaign was beyond the authority of the State Bar while being designed to enhance the prestige of its incumbent governors. The State Bar responded. The case was heard by a judge from the Eastern District of Washington. After a hearing and argument, the district court denied Gardner's motion for a preliminary injunction and granted the State Bar's motion to dismiss his complaint with prejudice. In an opinion the court found that the challenged campaign had "no political lobbying purpose whatsoever" and that Gardner had "not been forced to adhere to or proclaim any political view or engage in any personally-repugnant political activity." The court further found that the campaign was "germane" to the State Bar's "compelling interest and stated purpose to advance understanding of the law, the system of justice, and the role of lawyers, as opposed to nonlawyers, to make the law work for everyone."
 
 
 4
 Gardner appeals.
 
 ANALYSIS
 
 5
 Compulsion to be associated with an organization whose very public campaign proclaims a message one does not agree with is a burden, as is compulsion to pay even one dollar to finance the campaign. We have some sense of Gardner's state of mind and do not fault him for attempting to shed the burdens by asserting his rights under the United States Constitution. But have these rights been infringed?
 
 
 6
 The Supreme Court of the United States has told us that there is some analogy between a bar that, under state law, lawyers must join and a labor union with an agency shop. Keller v. State Bar of Cal., 496 U.S. 1, 12, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990). It is infringement of the constitutional freedoms of lawyers for a state bar to use their dues "to endorse or advance a gun control or nuclear freeze initiative," because these issues are unrelated to the purposes for which the state bar is formed. Id. at 16, 110 S.Ct. 2228. On the other hand, it is not unconstitutional for the state bar to spend its income from its members' dues "for the purpose of regulating the legal profession or `improving the quality of the legal service available to the people of the State.'" Id. at 14, 110 S.Ct. 2228, quoting Lathrop v. Donohue, 367 U.S. 820, 843, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961).
 
 
 7
 As the Supreme Court acknowledged, it is not always easy to discern on which side of the line the activities of a state bar association fall. Id. at 15, 110 S.Ct. 2228. Gardner argues that the State Bar's attempt to improve the public image of Nevada lawyers is a political purpose; that the campaign, as it is addressed to public opinion, is addressed to the most powerful political force in a democracy; that by analogy Lehnert v. Ferris Faculty Ass'n, 500 U.S. 507, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991) governs in its holding that a public relations campaign to enhance the reputation of teachers went beyond the legitimate functions of a teachers' union and so violated the First Amendment freedom of its members.
 
 
 8
 Undoubtedly every effort to persuade public opinion is political in the broad sense of that term. However, what Keller found objectionable was not political activity but partisan political activity as well as ideological campaigns unrelated to the bar's purpose. What the Supreme Court held objectionable in Lehnert was education about the teaching profession unconnected to the collective bargaining function of the union. Lehnert, 500 U.S. at 528, 111 S.Ct. 1950. In contrast, the activity here is highly germane to the purposes for which the State Bar exists.
 
 
 9
 Among the functions of the State Bar in this case is the function identified by the district court — "to advance understanding of the law, the system of justice, and the role of lawyers, as opposed to nonlawyers, to make the law work for everyone." That purpose is satisfied by the State Bar's campaign to dispel any notion that lawyers are cheats or are merely dedicated to their own self-advancement or profit. The law, rightly understood, is not a business where the bottom line dictates the conduct that is permissible. The law is a profession where a near monopoly of access to the courts is granted to a trained group of men and women on the basis that they will follow the profession's rules of conduct and in so doing serve the cause of justice.
 
 
 10
 Gardner makes the point that lawyers are supposed to serve their clients, not "everyone." But the underlying assumption that justifies the justice system is that everyone is served by the adequate representation of conflicting interests and perspectives. It is perfectly true, not puffery, that lawyers strive to make the law work for everyone by their fair and zealous representations of their clients. It is important for the public to understand that a lawyer representing a defendant in a criminal case is not a defender of crime, and that a lawyer advising his or her client of a tax break is not a scoundrel but an ally of a government that should collect as tax no more than the law allows. It is equally important for citizens to know that a prosecutor seeking to imprison a man believed guilty of a crime is serving justice, as is the state tax department's attorneys seeking to collect a tax. The lawyer who represents a client who believes she has been unfairly denied promotion is as much a partner in the system of justice as the lawyer who acts for her employer seeking to explain the apparent discrimination.
 
 
 11
 The public needs to know that often there are two, or more, sides to a story or a situation. More's Utopia has no lawyers, but in our real world, lawyers are not merely a necessity but a blessing. If the public doesn't understand that — and the State Bar had reason to think many members of the public did not — the justice system itself will wither. The work of the State Bar to foster public understanding of the adversary nature of law is vital to the bar's function. It is no infringement of a lawyer's First Amendment freedoms to be forced to contribute to the advancement of the public understanding of law.
 
 
 12
 AFFIRMED.