SYKES, Circuit Judge,
dissenting from the denial of rehearing en banc.
Three Wisconsin lawyers filed an objection to the State Bar’s use of their mandatory bar dues to fund a public-relations campaign designed to improve the image of lawyers and the legal profession. Their First Amendment challenge raises important questions about the continued viability of Thiel v. State Bar of Wisconsin, 94 F.3d 399 (7th Cir.1996), the validity of Wisconsin Supreme Court Rule (“SCR”) 10.03(5)(b)1, and the proper approach to the “germaneness” inquiry that determines whether a compulsory speech subsidy is consistent with the constitution, at least in the context of a mandatory bar. The State Bar defends Thiel and SCR 10.03(5)(b)1, and argues that its use of mandatory bar dues for a public-image campaign is constitutional under Keller v. State Bar of California, 496 U.S. 1, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990).
My colleagues side with the challengers on the first two inquiries, overruling the primary holding in Thiel and effectively invalidating SCR 10.03(5)(b)1. Panel Op. at 714-18. I agree with this part of the opinion. The compelled-subsidy doctrine of Keller is not limited to cases challenging the use of compulsory bar dues for ideological or political activities, as Thiel held and the supreme court rule implies. It applies more broadly, for the reasons the panel has amply explained. Under Keller and the Supreme Court’s related decisions in the union-shop context, a mandatory bar association may use compulsory bar dues only for activities that are germane to the constitutionally relevant justifications for forced bar-association membership: (1) the regulation of the legal profession; and (2) the improvement of the quality of legal services. Keller, 496 U.S. at 14, 110 S.Ct. 2228; see also Romero v. Colegio de Abogados de Puerto Rico, 204 F.3d 291, 297-303 (1st Cir.2000). Activities not germane to these purposes must be funded from voluntary dues. This is so regardless of whether the challenged expenditure qualifies as “political” or “ideological.”
More specifically, Keller held that “the guiding standard” for assessing the constitutionality of a mandatory bar association’s use of compulsory bar dues is “whether the challenged expenditures are necessarily or. reasonably incurred for the purpose of regulating the legal profession or ‘improving the quality of the legal service available to the people of the State.’ ” 496 U.S. at 14, 110 S.Ct. 2228 (quoting Lathrop v. Donohue, 367 U.S. 820, 843, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961)). The panel comprehensively explains why Keller and more recent developments in Supreme Court caselaw require us to overrule the primary holding in Thiel. Panel Op. at 714-18.
Overruling Thiel, in turn, effectively invalidates critical limiting language in SCR 10.03(5)(b)1. This rule was adopted by the Wisconsin Supreme Court in response to Keller and essentially reflects the more limited understanding of Keller articulated in Thiel. The rule provides, in pertinent part, that “[t]he State Bar may not use compulsory dues of any member who objects to that use for political or ideological activities that are not reasonably intended for the purpose of regulating the legal *722 profession or improving the quality of legal services.” WIS. SUP. CT. R. 10.03(5)(b)1. To the extent that this language limits the constitutionally required germaneness inquiry to “political or ideological activities,” the rule is too narrow, as the panel has correctly held.[1] Panel Op. at 718. Thus far I have no quarrel with anything in the panel’s analysis; to the contrary, I think it is thorough and sound.
I cannot agree, however, with the panel’s application of these principles, which appears in Part III of the analysis section of the opinion. Panel Op. at 718-21. I recognize that this sort of disagreement would not ordinarily justify rehearing this case en banc. But in this case I think it does. After setting the constitutionally required germaneness inquiry on a sound doctrinal foundation, the panel applies the standard in a way that drains it of any real meaning. The panel concludes that the State Bar’s public-image campaign satisfies Kellers germaneness requirement; in my view, this conclusion is procedurally questionable and substantively flawed.
As to procedure, as the panel has noted, this case came into federal court from an arbitration proceeding commenced in accordance with the procedural scheme established in SCR 10.03(5)(b) for challenging State Bar expenditures of mandatory bar dues. Pursuant to the requirements of the rule, the objecting lawyers sought arbitration on the question of whether the State Bar’s public-image campaign could properly be funded from their compulsory dues or must instead be funded from voluntary dues. The arbitrator held that because the public-image campaign was not “political or ideological,” the germaneness limitation on the use of compulsory dues set forth in SCR 10.03(5)(b)1 was not implicated. The arbitrator did not decide the Keller germaneness issue, properly understood — that is, he did not decide whether the public-image campaign was germane to “improving the quality of legal services.”[2] The arbitrator did, however, express some significant skepticism on the matter. He said:
I believe that based on the evidence presented it is a stretch, in fact, to regard [improving the quality of legal services] as the campaign’s primary purpose. There is simply too much in the record indicating that the predominant goals have more to do with the interests of lawyers than with the interests of their clients or potential clients.
I will return to this point in a moment.
The objecting lawyers sought judicial review of the arbitrator’s decision in state court, and the State Bar removed the suit to federal court based on the lawyers’ First Amendment challenge to SCR 10.03(5)(b)l and this use of their mandatory bar dues. As I have noted, the State Bar’s fallback position was that if the political/ideological limitation in the supreme court rule was invalid, this court can and should decide the broader germaneness *723 question. And that’s what the panel has done.
Here’s the (arguable) procedural problem: The objecting lawyers asked for a remand if they prevailed on their claim that the supreme court rule is unconstitutional. They said a remand was appropriate because the arbitrator did not decide the broader germaneness question and because the record in the district court on that issue is nonexistent or at best incomplete. It’s not entirely clear to me whether a remand is necessary or appropriate under the circumstances. What is clear, however, is that the panel’s germaneness holding rests entirely on broad and generalized assertions about public trust in the legal profession, not on anything in the record.
And this is where I think the opinion is off-track as a substantive matter. The panel concludes that the State Bar’s public-image campaign is indeed germane to “improving the quality of legal services.” The rationale for this conclusion is essentially twofold. First, the panel simply accepts the Bar’s assertion that the point of the image campaign was to foster public trust in the legal profession and defers to the Bar’s “theory” that greater public trust will improve the quality of the legal services Wisconsin lawyers provide to their clients. Panel Op. at 718-19. Second, the panel adopts the rationale of the Ninth Circuit’s decision in Gardner v. State Bar of Nevada, 284 F.3d 1040 (9th Cir.2002), an analogous case involving a First Amendment challenge to the Nevada State Bar’s use of compulsory dues to fund a similar public-relations campaign. Panel Op. at 719-20. This is a serious misapplication of Keller’s germaneness requirement. The panel credits the Bar’s germaneness “theory” with little critical analysis and assigns Gardner far more persuasive weight than it can reasonably bear.
The State Bar’s factual characterization of the image campaign is called into question by the very slogan under which the public-relations effort flies: “Wisconsin Lawyers. Expert Advisors. Serving You.” The Bar’s purpose here is unmistakable: It is to boost public opinion of Wisconsin’s lawyers, not enhance public understanding of the legal profession or improve the quality of the work lawyers do for their clients or the public. To be “germane” to “improving the quality of legal services,” an expenditure of compulsory bar dues should as a factual matter have at least some connection to the law, legal advising, legal education, legal ethics, or the practice of law. The public-image campaign was aimed at none of these things; it was all about marketing. Indeed, the State Bar called it a “Branding Initiative” and pitched it to Wisconsin’s lawyers as a public-relations effort designed to “brand the profession” in order to “improve the public’s perception of the profession.”
The ads themselves were totally content-free, at least insofar as conveying any meaningful information about the law or the role of lawyers in our legal system. They depicted lawyers engaged in various forms of legal and nonlegal volunteer work in their communities. This kind of “soft” advertising may have a place in the package of services a bar association might legitimately want to provide for its members, but let’s not pretend it had anything to do with educating the public about the actual role of lawyers in our legal system. This was an image campaign, after all.
But even accepting at face value the State Bar’s contention that the ads were designed to promote public understanding of and therefore trust in the legal profession, any claim that the image campaign was reasonably related to improving the quality of legal services is at best strained and at worst a little odd. To state the *724 obvious — and as the arbitrator recognized — an ad campaign directed at boosting sagging public opinion of the legal profession serves the interests of lawyers, not their clients or the public. In what sense was this an expenditure “necessarily or reasonably incurred for the purpose of ... improving the quality of ... legal serviced,” as required by Keller? 496 U.S. at 14, 110 S.Ct. 2228. The opinion contains a number of conclusory assertions on this point — e.g., that greater public trust as a general matter will yield better communication between individual clients and their attorneys and ultimately lead to more competent legal advice. Panel Op. at 718-19. This strikes me as both implausible and entirely speculative; it is highly attenuated as a matter of constitutional justification and in any event is completely unsupported on this record.[3]
The Ninth Circuit’s opinion in Gardner, on which the panel heavily relies, is long on rhetoric and short on reasoning. It also misses the whole point of Keller. Gardner rests its conclusion entirely on lofty truisms about the importance of lawyers and a naked assertion that the public “needs to know” about their role in making the justice system work. From this the court concludes that the Nevada State Bar’s public-relations campaign is “highly germane to the purposes for which the State Bar exists.” Gardner, 284 F.3d at 1043. This is not the correct legal standard. The pertinent question is not whether the challenged expenditure is reasonably related to any purpose for which a bar association exists; that is useless as a decision principle if the point is to protect free-speech rights in the context of forced bar-association membership. The pertinent question — the one the Supreme Court said is the “guiding standard” for First Amendment purposes — is whether the challenged expenditure is reasonably related to one of the constitutionally relevant purposes that justify mandatory bar membership: regulation of the bar or improving the quality of legal services. Keller, 496 U.S. at 14, 110 S.Ct. 2228. The Ninth Circuit did not address this question, and it is the only one that matters. The court made no effort, that is, to explain how the Nevada State Bar’s expenditure of compulsory bar dues on a public-image campaign for lawyers was “necessarily or reasonably incurred for the purpose of ... improving the quality of ... legal service[s].” Gardner is unpersuasive. We should not follow it.
In the end, while the panel has done an exemplary job of articulating the constitutional principles that govern this case, its application of those principles effectively dilutes them.[4] I have no objec *725 tion to a “generous” interpretation of the germaneness requirement. Panel Op. at 720. But the panel has gone well beyond “generous.” If a public-image campaign designed to benefit lawyers can be considered germane to improving the legal services they provide to their clients, then the germaneness standard in this circuit is not merely generous, it is meaningless. I would rehear this ease en banc.

. The plaintiffs here — Jon Kingstad, Steven Levine, and James Thiel — are frequent mandatory-bar litigants and are currently waging a two-front war against the alleged unconstitutional use of their compulsory bar dues. This case is one front. The other is a petition before the Wisconsin Supreme Court to amend SCR 10.03(5)(b) 1 to delete the language that limits the Keller "germaneness” inquiry to State Bar activities that are "political or ideological" in nature. See Pet. to Amend SCR 10.03(5)(b)1, No. 09-08, filed on August 24, 2009, by Petitioners Jon Kingstad, Steven Levine, James Thiel, and 40 other State Bar members, available at http://www. wicourts.gov/supreme/docs/0908petition.pdf. The state supreme court is holding this rule-making petition in abeyance pending the outcome of this litigation.

. No one suggests that the public-image campaign had anything to do with "regulating the bar.”

. I am not suggesting that the germaneness inquiry requires an examination of the "subjective motives of bar leaders” or that the State Bar must establish that its "expenditures were actually successful in accomplishing its stated purpose.” Panel Op. at 719. Keller's germaneness requirement does not require close scrutiny of a challenged expenditure of compulsory bar dues, but it requires something more than mere rational-basis review, which applies to all laws, starts from a presumption of constitutionality, and "deems a law valid if any justification for it may be imagined.” United States v. Skoien, 614 F.3d 638, 641 (7th Cir.2010) (citing Vance v. Bradley, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979)). Keller's germaneness requirement implements the protections of the First Amendment; it therefore is not analogous to rational-basis review, as my colleagues suggest. Panel Op. at 719 ("The [germaneness] standard of review is deferential, as when we review challenged legislation to determine whether it is reasonably related to a legitimate governmental purpose.”).

. As the panel observes, Thiel's alternative holding provides some support for a loose and highly deferential understanding of the germaneness review required by Keller. Panel Op. at 720-21. Thiel approved the use of *725 compulsory bar dues for a variety of programs sponsored by the State Bar of Wisconsin — including a mock-trial competition and awards given to reporters for law-related writing — but offered no explanation for this conclusion. 94 F.3d at 405 ("All of these [programs], it seems, are geared towards improving the quality of legal services in Wisconsin. Under Keller, they are germane and may be funded by compulsory dues, regardless of whether they are ideologically oriented.”). My colleagues summarily reaffirm this aspect of Thiel. Panel Op. at 720 (Thiel's "unanimous assessment of the actual germaneness of [the challenged] activities remains sound.”). This alternative holding in Thiel, and the panel's endorsement of it here, reflect an implicit concern about excessive federal-court involvement in the affairs of state bar associations. I share that concern. But the state supreme court’s decision to make bar-association membership mandatory for all lawyers operates as a continuing burden on their First Amendment rights, which imposes constitutional responsibilities on the State Bar and makes a federal-court role inevitable, or at least unavoidable. And in this context, deference does not have a particularly strong claim. The State Bar is not (as the Supreme Court observed in Keller) "the typical government official or agency.” 496 U.S. at 12, 110 S.Ct. 2228.